## A. P. Goddard et al. v. Chicago & North-Western Ry. Co.

1. STATUTES—*Act of March 7, 1899, in Regard to Street Railways, is Confined to Companies Incorporated Under the General Laws of This State.*—The act of March 7, 1899, in regard to street railways, is confined to companies incorporated under the general laws of this state for the purpose of constructing, maintaining or operating horse, dummy, or street railroads.

2. SAME—*Construction of Word " Person " or " Persons."*—Section 1 of chapter 131 of the revised statutes provides that in the construction of all statutes now in force, or which may hereafter be enacted, the word person or persons, as well as all words referring to or importing persons, may extend to and be applied to bodies politic and corporate as well as individuals.

3. SAME—*Conferring Power of Eminent Domain.*—Statutes conferring power to exercise the right of eminent domain are to be construed strictly.

4. EQUITY PRACTICE—*Where Case is Heard on Bill and Answer.*— Where a case is heard on bill and answer, or upon bill, answer and exhibits, the answer is taken as true. The complainants thereby admit that all that is stated in the answer is true, whether it be responsive to the bill or not, and that they have no ground of relief except the facts which are substantially admitted in the answer to be true.

5. SERVITUDES—*Transmission of Electric Heat, Light and Power on the Poles of a Street Railway.*—The transmission of electric heat, light and power on the poles of a street railway or the addition of another system of poles and wires to also transmit electric heat, light and power, is an added servitude.

Bill for an Injunction.—Appeal from the Circuit Court of Stephenson County; the Hon. JAMES S. BAUME, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed December 16, 1902.

OSCAR E. HEARD, attorney for appellants.

S. A. LYNDE, attorney for appellee; A. W. PULVER and LLOYD W. BOWERS, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

This was a bill filed by A. P. and A. J. Goddard, partners, engaged in constructing a street railway within and outside of the city of Freeport, to enjoin the Chicago & Northwestern Railway Company from preventing complainants from laying their street railway across the railroad track of said railway company on a public highway called Gund avenue in the town of Freeport, outside the city of Freeport, and to restrain said railway company from tearing up or destroying said street railway track when laid on said highway, and from interfering with complainants in crossing said railroad track with their cars. A preliminary injunction was issued without notice. The bill was

answered. A motion to dissolve the injunction was heard and granted, and the bill was dismissed. This is an appeal by said complainants from said decree.

It is first argued that there was no final hearing, and that if the injunction was properly dissolved, still the bill should have been retained until a final hearing. This is a misapprehension of the record. The motion to dissolve the injunction was heard and granted on April 3, 1902. On April 4, 1902, the following proceedings were had, according to the record before us:

"This cause came on to be further heard at this term of court upon the bill of complaint and answer thereto filed herein, and having been argued by the counsel for the respective parties, upon consideration thereof it was ordered, adjudged and decreed that the complainants' said bill of complaint for want of equity appearing on the face of the bill be and the same is hereby dismissed with costs to the defendant to be taxed."

It is from that decree complainants appeal. Complainants did not file a replication to the answer, though the answer had been on file since February 28th, and did not seek any postponement, but joined in a submission and argument of the cause upon bill and answer only. That was a final hearing.

The bill alleges that on June 23, 1901, the board of supervisors of Stephenson county granted to complainants the right to locate, construct, operate and maintain a street railway for twenty years from that date, along and upon certain highways lying without any incorporated city or village, including the highway called Gund avenue, at the point in question. This is the sole authority under which they were attempting to cross defendant's tracks and right of way when defendant sought to prevent them, and when this bill was filed and a temporary injunction obtained. The answer admits the county board did pass such an order, but denies it had any power or authority to grant any such right or privilege to complainants, for two reasons: first, because the county board had no authority to grant to natural persons the right to construct and oper-

ate a street railway along a public highway; and second, because the grant in question was not only to construct and operate a street railway, but also to construct, maintain and operate a system of poles and wires for the distribution of electricity for lighting, heating and power, and the county board had no authority to grant to complainants any right to construct or maintain a system of poles and wires upon and along public highways for that purpose. The county board had no authority over the highways in that respect, nor any right to grant a license of that character, except the authority conferred upon it by the act in regard to street railroads, in force March 7, 1899. The first section of said act provides "that any company which has been or shall be incorporated under the general laws of this state for the purpose of constructing, maintaining or operating any horse, dummy or street railroad or tramway * * * may, subject to the provisions contained in this act, locate and construct its road upon and over any street, alley, road or highway, or across or over any waters in this state," etc. Section two authorizes the exercise of the right of eminent domain whenever it is necessary for the construction, maintenance or operation of such road to take or damage private property. Section three provides that "no such company shall have the right to locate or construct its road * * * upon or along any road or highway, or upon any public ground, without any incorporated city, town or village, except upon the consent of the county board." Section four enacts that "every grant to any such company of a right to use any * * * highway or public ground shall be subject to the right of the proper authorities to control the use, improvement, and repair thereof," etc. This act by its terms is confined to companies incorporated under the general laws of this state for the purpose of constructing, maintaining or operating horse, dummy, or street railroads. The first section purports to apply only to incorporations of that kind. The words "such company" in the other sections refer only to companies described in the first section. If, therefore, the words

of the act are to be given their plain and obvious mean-
ing, the county board had no authority to confer the grant
here attempted upon complainants, who are not incorpo-
rated. It is, however, urged that this statute is to be con-
strued as if the words " or any person " has been inserted
therein as a party to whom such a grant might be made,
or that the word " company " should be construed to
include a private person. Section one of chapter 131 of
the revised statutes is in part as follows :

" In the construction of all statutes now in force, or which
may hereafter be enacted, the following rules shall be
observed, unless such construction would be inconsistent
with the manifest intent of the legislature or repugnant to
the context of the same statute, that is to say :  *  *  *
Fifth—The word ' person ' or ' persons,' as well as all words
referring to or importing persons, may extend and be applied
to bodies politic and corporate as well as individuals."

Complainants seem to rely upon the provision just quoted
as justifying the construction for which they contend. It,
however, does not provide that words importing a corpora-
tion shall be applied to a natural person. Its provision is
the reverse of that here asserted. Besides, the construction
of this particular act here contended for is forbidden by the
first part of section one of said act in relation to the con-
struction of statutes, because to interpret the word " com-
pany " in the act of 1899, as including any private person,
would be inconsistent with the manifest intent of the legis-
lature and repugnant to the context. The act of 1899 is
confined to companies incorporated under the laws of the
state, and which are therefore subject to such special restric-
tions and limitations as the legislature has seen fit to cast
upon corporations; and further, it is limited to corporations
organized for a particular purpose, and who are subject to
any further restrictions the legislature may have imposed
upon corporations organized for that special object. Such
a construction would also violate the rule that " public
grants shall not be extended by implication in favor of the
grantee beyond the natural and obvious meaning of the word
employed, even if by such construction the object of the

grant is utterly defeated." (Mills v. County of St. Clair, 2 Gilm. 197, 228.) Again, the act in question confers upon the corporations therein specified authority to exercise the right of eminent domain. Nothing in the act expresses any intent of the legislature to confer that power upon private persons. Statutes conferring power to exercise the right of eminent domain are to be construed strictly. (Ligare v. City of Chicago, 139 Ill. 46.) Yet the result of construing this statute to apply to individuals will be to confer the right of eminent domain upon them by implication. Complainants rely upon Chicago Dock Co. v. Garrity, 115 Ill. 155, and McGann v. The People, 194 Ill. 526, as justifying and requiring the court to interpret this statute as authorizing the county board to grant a license to private persons to occupy a highway with a street railway. In those cases the court was not construing a grant of power, but a limitation upon a grant of power. The limitation in terms applied only to corporations. The court held that natural persons were within the purpose and intention of the limitation which forbids granting any railroad the right to lay its track in a public street without a petition of the owners of a certain proportion of the frontage. In the Garrity case the court called special attention to the fact that it was construing, not a grant of power, but a limitation upon a power granted. We conclude the county board did not have authority to confer upon private persons a license to occupy this highway with their street car line. Therefore complainants had no right to cross defendant's tracks and right of way in said highway with their street car line, and the bill was without equity on its face.

Where a case is heard on bill and answer, or upon bill, answer and exhibits, the answer is taken as true. The complainants thereby admit that all that is stated in the answer is true, whether it be responsive to the bill or not, and that they have no ground of relief except the facts which are substantially admitted in the answer to be true. (R. S., Chap. 22, Sec. 29; DeWolf v. Long, 2 Gilm. 679; Kitchell v. Burgwin, 21 Ill. 40; Mason v. McGirr, 28 Ill. 322.) It

follows that in a cause heard upon bill and answer, a decree dismissing the bill will not be reversed if the answer taken as true justifies the decree. The answer here avers that defendant is and has been for over forty years the owner in fee of its right of way at the point where said highway known as Gund avenue crosses its right of way; that said highway was not laid out by any legal proceedings, but that defendant dedicated to the use of the public for the purpose of a public crossing and highway at said point the part of its right of way which is used and occupied by the public as such highway; that the construction and mainte- nance of a system of poles and wires upon and along said highway and over and across defendant's right of way and track at the point where said highway intersects defendant's right of way is an additional burden to defendant's right of way and track; and that complainants had not brought any condemnation proceeding against defendant to acquire the right to construct and maintain such system of poles and wires across defendant's right of way at that point, and had not acquired any legal right to so lay their track or construct and maintain their system of poles and wires across defendant's right of way. The answer further alleges that the grant by the county board to complainants included a license to construct, maintain and operate, along said highway, a system of poles and wires for the distribu- tion of electricity for lighting, heating and power. Com- plainants do not here claim the county board had any power to permit them to cross defendant's right of way and track on the highway with a system of poles and wires for the transmission of light, heat and power, but their argument is that their bill only avers they were construct- ing a street railway, and that the validity of the rest of the grant is not now involved. But the bill alleges complainants accepted the grant, which means the entire grant tendered by the county board, and it follows that the poles now being erected may hereafter be used to transmit light, heat and power pursuant to the license. It was decided in C., B. & Q. R. R. Co. v. West Chicago St. R. R. Co., 156 Ill. 255, that the use of a street in a city for a

street railway falls within the purposes for which streets are dedicated, and that a steam railroad company which owns the fee in the streets and has received no compensation is not entitled to an injunction restraining the street railway from crossing its tracks in the street. Assuming that this doctrine applies to highways in the country, still it must be admitted that the transmission of electric heat, light and power on the poles of a street railway, or the addition of another system of poles and wires to also transmit electric heat, light and power, is an added servitude. While complainants in their bill do not allege they are erecting their poles for the purpose of availing of that part of the grant which permits them to convey electric light, heat and power along the highway and across defendant's right of way, yet they aver they have accepted the grant and do not in the pleadings disclaim the purpose to avail of all the rights granted by the county board. The pleadings do not indicate that the grant was of the right to erect two independent systems of poles and wires, one for a street railway and another for the transmission of electric light, heat and power, and that complainants were only erecting the former. It appears to have been one entire grant, and while the same wires, perhaps, can not be used for both purposes, it may well be the same poles can and will be so used. As the pleadings stand it must be assumed complainants are erecting their poles for all the purposes of the accepted grant. These purposes were in part unauthorized, therefore complainants were not entitled to the injunction.

The decree is therefore affirmed.