In re Petition of **GRAND RIVER DAM AU-THORITY** for declaratory judgment determining validity of contracts with City of Wagoner, and R. S. Goodman Company of Oklahoma, Inc., and determining validity of action proposed to be taken under said contracts and Petition for Writ of Prohibition.

**No. 44424.**

Supreme Court of Oklahoma.

April 20, 1971.

Pitcher, Logan & Lowry, William H. Castor, Vinita, for petitioner.

Bonds, Matthews & Mason, A. Camp Bonds, Jr., Muskogee, for respondents.

BERRY, Chief Justice.

Under authority of 82 O.S.1961 § 861 et seq., Grand River Dam Authority, a state agency, has applied to this Court for declaratory judgment determining validity, and action to be taken, under contract executed between petitioner and the City of Wagoner, and upon which depends validity of a contract between petitioner and R. S. Goodman Company of Oklahoma, Inc. Petitioner seeks further relief against the district court of Wagoner County, to prevent enforcement of a restraining order issued against petitioner upon application of protesting citizens, respondents herein; and, to prohibit further action in respect to respondent's prayer for permanent injunction. This proceeding was engendered by matters summarized hereafter.

The City, in a proprietary capacity, owns an electrical distribution system operated by sale of electrical energy purchased from petitioner. Past experience dictated necessity for increased capacity to meet local demands. In July 1969 city officials employed a private engineering firm to survey and prepare plans for improvement of this system. Of primary concern was construction of an additional transmission line to increase capacity and fulfill immediate and anticipated future needs of the City. The completed survey proposed construction of a 69 KV line connected with petitioner's line at the north city limits. The plan proposed looping this line around the city's east side, then south outside the platted area until the line reached North Second Street and Sprague Avenue, thence to South Third, one-half block west, a block south to South Fourth Street and thereafter west to a substation to be located near the intersection of Madison Avenue and South Fourth Street. Here it may be noted South Fourth in this area, and extending east to city limits, although originally platted and dedicated, never has been opened or improved as a city street.

A portion of the proposed line along South Fourth will be in a residential area. However, engineering factors established this as the most feasible and economical route for a line to the proposed substation, in best interests of long range planning, and the least disruptive. Two other possible routes for the line were considered. One was rejected because a routing from the north limits through center of the city would not provide a satisfactory line to the substation. An alternative route along railroad right of way would not provide a feasible line to the substation, since peti-

tioner did not own this right of way, and existing structures along this route made construction of such line unacceptable.

The completed survey was presented August 4, 1969, at a regular meeting of the city council. Although the council did not formally adopt the plan, no objections were made against the proposal, either by city officials or these respondents. On September 9, 1970, a contract was executed whereunder petitioner was to build and supply the line and the City was to purchase electrical energy for resale. Pertinent to issues involved, this contract contained these provisions:

"The Authority shall construct, furnish, install, operate and maintain all facilities, transmission lines and necessary equipment for the sale and delivery of the Customer's total requirements for electric power and energy at points of inter-connection and points of delivery established by this contract and such additional points as may be agreed upon by the parties.

\* \* \* \* \* \*

"If it becomes necessary for the Authority to locate any of its lines or facilities within the Customer's limits or on its lands to serve the electric load covered by this contract, the Customer will grant to the Authority rights-of-way and easements over its lands, streets and alleys sufficient for the construction and maintenance of such facilities.

\* \* \* \* \* \*

"The Authority agrees within one year of the date of the execution of this contract to provide loop service from its Whitehorn Substation to existing substation facilities in the City of Wagoner. In this connection, the City agrees to remove poles and to provide right-of-way as necessary through the City of Wagoner at no cost to the Authority."

For many years W. R. Holway & Associates, a corporation, has been petitioner's consulting engineer. Petitioner's chief engineer submitted the survey to Holway, which made independent reconnaissance of the area, then prepared engineering and structural designs for the entire project, and contract specifications and documents detailing eventual construction. Thereafter (April 20, 1970) petitioner contracted with R. S. Goodman Company of Oklahoma, Inc. for construction of additional facilities to provide necessary improvements for City's distribution system. The proposed transmission line was required to be designed and constructed in accord with National Electrical Safety Code.

August 12, 1970, respondents, residents and taxpayers, sought and obtained temporary restraining order enjoining petitioner, agents or subcontractors, from performing any construction within the City upon the proposed transmission line. The cause was set for hearing August 25, 1970, upon application for injunction, and petitioner then brought this proceeding seeking extraordinary relief.

Respondents' answer, in addition to recitation of non-germane, historical matters not of record, allegedly showing petitioner's disinclination to build the line because of obligation previously incurred, advanced ten separate grounds of complaint against the proposed line. Matters so urged necessitated presentation of evidence to provide basis for this Court's consideration of the question. Inability of the parties to present these matters by stipulation, or by depositions to be taken at petitioner's expense, eventually required this Court to appoint a trial judge to conduct an evidentiary hearing. The record from his hearing is so extended as to preclude summation of evidence adduced, so that generally we shall refer only to effect of evidence upon the argument considered.

One important evidentiary fact concerns a district court action by which some of respondents' predecessors in interest secured judgment (August 26, 1966), vacating certain platted streets for non-user. This judgment affected a part of South Fourth Street between the east line of

Powell Avenue and west line of Hall Avenue and provided:

> "* * * legal and equitable title to such portion of South Fourth Street * * * is, vested by reversion in and to plaintiffs in fee simple as abutting owners * * *; that the City of Wagoner be, * * * vested with a perpetual easement for the construction and maintenance of public sewer, water and electric lines on strip of land 80 feet in width running east and west between the East line of Powell Avenue and the West line of Hall Avenue. * * *"

On November 7, 1966, the city council voted to relinquish the north 20 feet of that easement reserved by the judgment above quoted. That judgment provided fee title relied upon by certain respondents in this cause.

Evidence also showed the day following presentation of the engineering survey the city council voted unanimously to request petitioner to change the proposed route without cost to the City. This letter request proposed rerouting the line along railroad right of ways. Petitioner's reply acknowledged the local problem, but pointed out the proposed line crossed the shortest distance of populated area, and had been decided upon only after other possible routes over railroad right of ways had been adjudged unfeasible, because of higher construction and maintenance costs, and increased potential hazards. The city council took no further action in any respect following execution of this contract September 9, 1970.

Much of the argument offered is based upon respondents' interpretation of the evidence, particularly as relates to choice of proposed route for the line, or presumed feasibility of other routes. Apparently this is advanced in an effort to support conclusions asserted as to indefiniteness of this contract, or petitioner's lack of any right to construct this line upon any city easement or right of way. And, further, that by implication this contract requires petitioner to "* * * enter into good faith bargaining concerning the route to be followed by the transmission line, * * *"

If we understand respondents' position, the principal complaint arises under the third proposition which asserts petitioner has only those rights granted by the City, which neither can alienate nor use city streets for the purpose proposed. Basically, respondents argue the quoted contract language provides the only ground giving petitioner any rights to use city streets for construction. Thus, since no easement or right of way is described, petitioner is a mere trespasser absent specific grant either by the City or the abutting owners. Since petitioner can secure no greater rights than those held by the City, which cannot legally use the streets for this purpose, until some grant or assignment of easement or right of way is made, petitioner lacks any right to proceed. As an adjunct to this, respondents also mention use of "necessary" in the contract, rather than "necessary and convenient" appearing in reference to petitioner's statutory authority. Respondents then urge this requires showing the proposed route is *necessary,* rather than *advantageous,* before the City can be required to assign right of way or easements in the streets.

■ Petitioner is an agency of the state, empowered by statute, supra, to construct, cause to be constructed, use and operate all facilities *necessary or convenient* to exercise of powers, rights, privileges and functions. Language of the statute best answers the claim petitioner must show both necessity and advantageousness of proposed action before City can be required to act.

■ Basic premise for respondents' position simply is that because the City cannot legally use streets for this purpose, such proposed use constitutes legal and physical invasion of respondents' rights and property. It is elementary that control of City streets within municipal corporations is reserved to the state, although cities have been delegated full power to control and regulate streets. Const., Art.

XVIII, §§ 2–3–7; 11 O.S.1961 §§ 642, 660, 672; Ex parte Duncan, 179 Okl. 355, 65 P.2d 1015. Having authority to control and regulate, the ensuing question concerns what use the City may make of those streets under the specified power, when engaged in a proprietary activity, i. e., operation of an electric plant and laying of poles and lines. Pool v. City of Cushing, 184 Okl. 77, 89 P.2d 294.

The City bears the delegated duty to regulate and control city streets intended primarily for public travel, which includes the power to utilize city streets for a special purpose. The City negotiated and executed a contract under which the City agreed to furnish sufficient right of way and easements for completion of the project, designed for securing electrical energy for use in City's distribution system. This business endeavor is closely related to City's affairs, undertaken in the public interest, and for public purposes. In such cases the predominant view permits construction of lines within streets or highways as a proper use incidental to enjoyment of the public easement. See 26 Am. Jur.2d Eminent Domain § 212; 58 A.L.R. 2d 535. The same principle is expressed in 39 Am.Jur.2d Highways, Streets and Bridges § 259:

"It is the rule in many jurisdictions that the use of a highway easement for the purpose of communication or the transmission of intelligence or electric current * * * for the benefit of the public or for some other public purpose, is a proper use, and does not constitute an additional servitude for which the fee owners need be compensated. * * *"

The same text, section 292, declares a transmission line erected under legislative authority in street or highway for public purpose is neither an unlawful obstruction nor a nuisance; poles and supports are not a nuisance provided they do not materially interfere with enjoyment of public right. If maintained or erected contrary to public regulation or order of controlling authority same may be regarded as a nuisance. The

limitation upon right to use public streets for such construction and operations requires this be done in a manner not to cause unnecessary injury or inconvenience to property owners, or interfere with access and proper enjoyment of their property. For review of cases holding electric power lines are a proper use of easement for streets, or highways, and impose no additional burden upon abutting property owners see annotation 28 A.L.R.2d 529 et seq.; Nelson v. Duquesne Light & Power Co. (Pa.), 338 Pa. 37, 12 A.2d 299; United States v. O. G. & E., 318 U.S. 206, 63 S.Ct. 534, 87 L.Ed. 716.

■ The City in exercise of authority conferred by statute, as concerns conduct and maintenance of municipal electric distribution system acts through its elected officials in a proprietary, or quasi-private and public capacity. Thus the City exercises authority as agent of local citizens in conducting an enterprise for benefit of the entire public. See Fretz v. City of Edmond, 66 Okl. 262, 168 P. 800, LRA 1918C 405. Moomaw v. Sions, 96 Okl. 202, 220 P. 865; 12 McQuillin, Mun.Corp. (Rev. Ed.) § 35.35.

■ By contracting with petitioner for construction of additional facilities the City acted within its powers. See 12 McQuillin, Mun.Corp. (Rev.Ed.) § 35.32. No greater burden will be imposed upon respondents than would have occurred in event the City had undertaken construction of the project. Being vested with authority to use the streets for a lawful purpose, it is our opinion arguments that petitioner's construction within platted streets will be unlawful and constitute a public nuisance, in violation of specified city ordinances and statutes (50 O.S.1961 §§ 1 and 2, defining public nuisance and providing penalties) are without merit. Expediency or wisdom of this contract are not matters with which this Court is authorized to interfere. See Petition of Grand River Dam Authority, etc., Okl., 320 P.2d 706.

Respondents cite Siegenthaler v. Newton, 174 Okl. 216, 50 P.2d 192; City of

Norman v. Ballard, 202 Okl. 93, 210 P.2d 340; Green v. City of Norman, Okl., 455 P.2d 58, as authority for argument the proposed line will impede traffic and constitute a public nuisance. Cursory examination of these cases discloses present inapplicability. In Green, supra, we recognized a city's right to control streets was limited to legitimate public purposes, and lease of part of a public street for private use was void.

In Ballard, supra, the city was adjudged to be without right to utilize part of a platted street as a storage yard for city property. The city's right in the street was created by dedication and held in trust for the public, and could not be put to a use inconsistent with highway purposes.

In Siegenthaler, supra, the controversy was between individuals, involving right of ingress and egress along a street, platted and dedicated by the subdivider, but subsequently closed entirely by one successor in interest. This Court held formal acceptance of dedication of a public street unnecessary. And, once having been dedicated, closure effected by fence, buildings, and utilization of the land for gardening, constituted a public nuisance abatable by an individual.

Text and case law establishes abutting owners have two distinct types of rights in public streets and highways: (1) a public right enjoyed in common with the general public; (2) private rights arising from ownership of contiguous property which exist regardless of ownership of the fee, including ingress and egress, right to have the street kept open as a thoroughfare, and to use the right of way not inconsistent with public use. 39 C.J.S. Highways § 144. The text also points out mere disturbance of abutting owner's rights by imposition of new uses consistent with highway purposes must be tolerated.

Although established and maintained primarily for convenience of public travel, there are many other purposes for which highways and streets may be utilized, i. e., water mains, gas lines, telephone and telegraph lines and electric power lines. State ex rel. York, v. Board of Commissioners Walla Walla County (Wash.) 184 P.2d 577; 172 A.L.R. 1001, and annotations. In Elliott, Roads and Streets, V. 1 § 495, the text points out in relation to rights in highways: " * * * The easement acquired is by no means confined to the right of passage or travel, for it is a matter of common knowledge, and therefore of law, that land acquired for a public easement is subject to all the burdens incident to that easement. * * * "

As against public interests, an abutting owner's privileges vary conversely to extent of actual public use, so that as public needs advance the owner's privileges are diminished and damage may be suffered. See 3 Nichols on Eminent Domain, (3rd Ed.) § 10.1. This principle provides basis for an expressed general rule that, where there is a conflict between rights of the public and an owner of abutting property, then rights of the fee owner are subordinate to the public. Ibid, § 10.211(2). In this connection see Padgett v. Ark. Power & Light Co. (Ark.) 290 S.W.2d 426.

The City's authority to utilize public streets for lawful purposes for benefit of the public is supported by reason and decisional law. Since construction of the proposed line is for accomplishment of a public purpose it is neither an unlawful obstruction nor a public nuisance. Respondents' arguments that construction of this transmission line within a dedicated street constitutes a public nuisance, if extended to their ultimate conclusion, simply would result in preventing the City and the general public from purchasing electrical energy without regard to present or future necessity.

Other contentions requiring discussion arise out of physical conditions which assertedly will exist after construction of the line. Respondents urge the line will impede traffic at intersections of specified streets, but particularly object to blocking access to property of named respondents.

The evidence shows, and petitioner admits, the proposed construction may interfere with ingress and egress to certain abutting owner's property. There is some interference with abutting owners resulting from presently existing lines. Under numerous prior decisions, damages are not recoverable for incidental inconvenience or consequential injury resulting from taking property for public use under Const. Art. II § 24. However, where special damage results from injury which is different from that suffered by community in general, as where ingress or egress is cut off, or materially affected, action in nature of damages for reverse condemnation may be maintained. A. T. & S. F. Ry. Co. v. Terminal Oil Mill Co., 180 Okl. 496, 71 P.2d 617; Okla. Turnpike Authority v. Chandler, Okl., 316 P.2d 828. Although exercise of eminent domain is not involved, where the public use materially affects abutting owner's rights the same principles apply.

Property of Wallace Taylor is located on South Fourth Street between Hall and Cobb Avenues. As mentioned, a portion of this street was vacated by judicial proceedings and fee title thereto vested in abutting owners, subject to petitioner's perpetual easement for utility and electrical lines. Thereafter, by appropriate action, the City relinquished the north 20 feet of that easement to Taylor. Petitioner had no knowledge of this, but upon learning such fact moved the projected line ten feet south of Taylor's property line. Construction according to plan will result in cross arms on the poles being approximately 4 feet from the property line, although transmission line itself would be a minimum of 31 feet above ground, or 6–7 feet above present city distribution lines.

The matters recited are basis of an extended argument: (1) this proposed transmission line will constitute legal invasion of Taylor's property, since respondent owns fee title to the center line of vacated portion of South Fourth; (2) construction will constitute a physical invasion of property under 63 O.S.Supp.1963 § 981 et seq., generally prohibiting activity within six feet of any overhead high voltage line or conductor. These statutes are part of our Public Health and Safety Code (63 O.S. 1961 § 1 et seq.), relating to safety of agents and employees performing activity within six feet of a high voltage line. This Court has not had occasion to construe and apply these statutes. Respondents offer no authority for the claim these statutes were designed for benefit of abutting landowners, or intended to prescribe a different, higher degree of duty than expressed in Earl W. Baker Utilities Co. v. Haney, 203 Okl. 91, 218 P.2d 621.

However, it is unnecessary to construe these statutes at this time in relation to the claim petitioner's line will constitute both legal and physical invasion of this respondents' property. Whatever invasion of the abutting owners' rights possibly may result from construction of the line likewise are justiciable by such owners' action in reverse condemnation.

The interest acquired by the public in streets or highways is an easement held in trust for the public, primarily for convenience of public travel. However, beyond the primary use, the law recognizes public streets also may be utilized for secondary uses, i. e., gas lines, water mains, electric lines, when these uses are not inconsistent with primary object of public use. Abutting landowners may not interfere with permissible secondary uses to which public streets and highways may be subjected. Erection of an electric transmission line for benefit of public generally is a proper secondary use of public streets, does not constitute an unreasonable encroachment which materially impairs use of the street as a public way, and abutting landowners ordinarily may not obstruct such proposed use. A city's contract permitting construction of transmission line advantageous to public interest is sufficient if the use to be made is for benefit of the public, and is not inconsistent with public use to which streets are devoted. The City was legally authorized to make use of streets for right of way of proposed trans-

mission line so long as right of free passage over streets was not impaired.

We hold erection of the planned line within boundaries of certain city streets, under valid contract with the City, will not constitute a public nuisance. Respondents' action does not provide basis for injunctive relief. Restraining order issued against petitioner (August 12, 1970), is dissolved, and further proceedings seeking to contest validity of the subject contract, or actions taken thereunder are enjoined, and the trial court prohibited from proceeding further in cause C–70–83 in the district court of Wagoner County, Oklahoma. See Petition of Grand River Dam Authority, etc., Okl., 320 P.2d 706.

The contract is declared valid.

All Justices concur.