**Jess W. PICKETT, Plaintiff and Appellant,**

v.

**CALIFORNIA PACIFIC UTILITIES, a California Corporation, and County of Iron, a political subdivision of the State of Utah, Defendants and Respondents.**

**No. 16627.**

Supreme Court of Utah.

Oct. 15, 1980.

Jess W. Pickett, pro se.

---

**2.** *Id.*, at 559. See also, *Fuoco v. Willilams* (Fuoco I), 15 Utah 2d 156, 389 P.2d 143 (1964).

Patrick H. Fenton, Cedar City, for Cal. Pac.

James L. Shumate, Iron County Atty., Cedar City, for Iron County.

MAUGHAN, Justice:

Plaintiff appeals a judgment of no cause of action, in which the trial court dismissed his complaint with prejudice after a trial on the merits. The judgment is affirmed. All statutory references are to Utah Code Annotated, 1953, as amended.

Plaintiff initiated this action seeking damages from California Pacific Utilities, hereinafter identified as Cal–Pac, for a permanent utility easement established across plaintiff's property. Plaintiff further challenged the authority of Iron County to grant a franchise to a public utility to use the public right–of–way in a highway, where the abutting property owner holds title to the underlying fee.

Plaintiff is the owner of a parcel of land located in a rural section of Iron County. His property abuts a highway established by user in accordance with Section 27–12–89.[1] The boundaries of the public easements are marked by fences. The area within the public right–of–way (between the fences) has been used by the public for vehicular travel and the driving of cattle and sheep for a period in excess of fifty years. Under the law, in effect, at the time the highway was dedicated to the use of the public, only the right–of–way and incidents

necessary to enjoying it was acquired by the public.[2] The underlying fee remained in the plaintiff, subject to the public easement.

Pursuant to the authority granted in Section 17–5–39,[3] the Board of Commissioners of Iron County granted a franchise to Cal–Pac to construct a power line (power poles and transmission line) within the public easement. Under plaintiff's theory of this case, the power line constituted an additional servitude on his estate for which he must receive compensation, and Section 17–5–39 confers authority on the county to grant a franchise only when the governmental authority has a fee interest in the highway, e. g., the determinable fee vested in county, city, or town when a plat is filed in accordance with Section 57–5–4.

The trial court ruled the construction of the power line served the public and in no way further encumbered plaintiff's property.

The precise issue posed by this case is whether the erection of an electric power line on a public highway, the fee to which is not in the public but in the owner of the abutting property, is within the purview of the easement for highway purposes, or imposes an additional servitude for which the abutting owner is entitled to compensation. Although both parties cite and rely on *White v. Salt Lake City*,[4] that case is distinguishable[5] and leaves the issue herein one

1. "A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years."

2. Sec. 27–1–7, provided: "By taking or accepting land for a highway the public acquires only the right–of–way and incidents necessary to enjoying and maintaining it. A transfer of land bounded by a highway passes the title of the person whose estate is transferred to the middle of the highway." This provision was repealed, Laws 1963, Ch. 39, Sec. 160. The relevant provisions of the statute currently in effect, are set forth in Sec. 27–12–101, which provides: ". . . A transfer of land bounded by a public highway on a right of way for which the public has only an easement passes the title of the person whose estate is transferred to the middle of the highway."

3. "They may grant franchises along and over the public roads and highways for all lawful purposes, upon such terms, conditions and restrictions as in the judgment of the board may be necessary and proper, to be exercised in such manner as to present the least possible obstruction and inconvenience to the traveling public, but such permission shall not be for a longer period than fifty years."

4. 121 Utah 134, 239 P.2d 210 (1952).

5. The *White* case involved the laying of water pipes along the street in a platted subdivision, the abutting property owner claimed the pipes constituted the imposition of an additional servitude. This Court affirmed the trial court's dismissal of plaintiff's complaint. The entire analysis of this Court was predicated on the estate (a limited or determinable fee) vested in

of first impression in this jurisdiction. However, this Court has enunciated the public policy of this State in regard to the multiple uses of the public streets in *State Road Commission v. Utah Power & Light Company* : [6]

"... Public welfare demands that the people be served with water, sewer systems, electricity, gas, telephone and telegraph, as well as transportation and means of travel. These services are vital to the well–being of our various communities. It would be almost impossible to meet these urgent requirements without making use of the public property. The presence of the utility facilities on the streets constitutes a use in the public interest subject to public regulation, and an object within the purview of a public policy to be established by the legislature."

There has been a great diversity of opinion in the different jurisdictions as to whether an electric power line constitutes a public use within the reasonable scope of the easement or imposes an additional servitude. If the line be deemed a proper highway use, then it is held to impose no additional servitude.[7]

■ After carefully considering the divergent opinions, we agree with the reasoning of the cases, which rule that the construction and maintenance of an electric power or transmission line, within the boundaries of a public highway, are consistent with the permissible uses to be made of a public highway easement and do not constitute an additional burden or servitude.[8] To sustain this rule, the principle is applied that uses of a public highway are expansive and are not confined to uses either permitted or contemplated at the time of dedication but are extended to new uses, consistent and proper, as civilization advances.

"With the growth of population, advancement of commerce and new inventions, society must adjust itself from existing conditions to growing and changed conditions and specifically to new means of transportation. A dedication of land for highway purposes when made is deemed to comprehend not only specific uses in the minds of the parties at the time, but also those developed and invented, which fall into the category of transportation in the future. ..." [9]

■ The courts adhering to this rule further reason that the easement in a public highway, which the public acquires, includes every reasonable means for the transmission of intelligence, the conveyance of persons, and the transportation of commodities, which the advance of civilization may render suitable for a highway. Thus, the poles and wires for carrying electric current for heat, light, and power are deemed a customary incidental use of the highways and are not considered an encroachment upon the right of an abutting property

the local authority in the streets of a platted subdivision. As owner of the limited fee, the rights of the county were deemed superior to those of the abutting property owner insofar as the normal use of the street was concerned. The water main was found to constitute a public use, the franchise for which was within the county commissioners' authority to grant. Since the matter was not in issue, the question was not resolved as to what constituted a proper use of the public easement when the underlying fee was in the abutting owner.

**6.** 10 Utah 2d 333, 340, 353 P.2d 171 (1960).

**7.** 2 Thompson on Real Property (1980 Replacement), Sec. 383, pp. 521, 524; 3 Nichols on Eminent Domain (3rd Ed.), Sec. 10.5, p. 459; Sec. 10.5[2], pp. 468–470; 58 A.L.R.2d 525, Anno: Electric light or power line in street or highway as additional servitude, Sec. 2, pp. 527–528.

**8.** *Hall v. Lea County Electric Cooperative*, 78 N.M. 792, 438 P.2d 632, 635 (1968) and the cases cited therein, *In Re Grand River Dam Authority*, Okla., 484 P.2d 505 (1971); *State v. Board of Com'rs of Walla Walla County*, 28 Wash.2d 891, 184 P.2d 577, 172 A.L.R. 1001 (1947); 52 A.L.R.2d 525, Sec. 3, pp. 528–533. The ruling of this court in *McBride v. McBride*, Utah, 581 P.2d 996 (1978) is not inconsistent, since a private easement was involved. The use of the public easement, sustained in this case, did not alter the character of the dominant estate, which was dedicated to public use.

**9.** *Fox v. Ohio Valley Gas Corporation*, 250 Ind. 111, 13 Ind.Dec. 593, 235 N.E.2d 168, 172–173 (1968).

owner so as to entitle one to a right to compensation for an additional servitude.[10]

CROCKETT, C. J., and WILKINS, J., concur.

HALL, Justice (dissenting):

I respectfully dissent.

As pointed out in the main opinion, the easement that is the subject of this litigation consists of a public roadway only, the underlying fee remaining in the plaintiff.[1] As further observed by the majority opinion, jurisdictions have split widely over the question of whether or not utility power lines erected along a roadway, the dedication of which granted an easement only in the public, constitute an additional servitude and entitle the underlying fee owner to additional compensation. The view adopted by a majority of the Court is shared by a handful of jurisdictions only.[2] Another view holds that such power lines are permitted only where their purpose directly relates to the use of the roadway itself (i. e., lighting, streetcar power, etc.).[3] A few jurisdictions hold to the idea that power lines pose no additional servitude on a public easement by dedication where the roadway is located in an urban environment, but do pose such an additional servitude where the roadway is in a rural environment.[4] Two jurisdictions combine the last two views, weighing both the location of the roadway and the purpose of the overhead lines in determining whether or not their installation constitutes an additional servitude.[5] Finally, some jurisdictions adopt the view that power lines are, by definition, an additional servitude upon a roadway in which the public has a right–of–way by easement only.[6]

Under all but the first of the foregoing five tests, the placement of defendants' utility lines on the roadway in question constitutes an additional servitude upon the easement held by the public therein. The roadway lies in a rural section of Iron County. The purpose of the lines bears no relationship to the use of the roadway itself. Under such circumstances, the vague test applied by the main opinion, employing concepts of the advancement of civilization, and proper and consistent uses of highways in light of human progress, seems severely to compromise the rights of landowners willing to provide gratuitously for vehicular traffic over their property. Any private roadway dedicated for use as a public thoroughfare thus becomes a pathway for whatever use a county authority, in its sole discretion, deems fit to impose, regardless of the detriment to adjacent landowners. Little imagination is required to summon up possible uses which would be severely detrimental, if not completely destructive; of surrounding farm land; uses which, according to the majority view, could be imposed without the necessity of any compensation whatsoever.

10. *State Board of Com'rs of Walla Walla County*, note 8 supra, at pp. 584, 585 of 184 P.2d; cf. *Bolinger v. City of Bozeman*, 158 Mont. 507, 493 P.2d 1062 (1972); *Mountain States Telephone & Telegraph Company v. Kelly*, 93 Idaho 226, 459 P.2d 349 (1969).

1. See footnote 2, main opinion.

2. See, e. g., *Alabama Power Co. v. Christian*, 216 Ala. 160, 112 So. 763 (1927); *United States v. Oklahoma Gas & Electric Co.*, 318 U.S. 206, 63 S.Ct. 534, 87 L.Ed. 716 (1943); *State v. Board of Commissioners*, 28 Wash.2d 891, 184 P.2d 577 (1947); and cases cited in the majority opinion.

3. See, e. g., *Gurnsey v. Northern California Power Co.*, 160 Cal. 699, 117 P. 906 (1911); *Thompson v. Orange & Rockland Electric Co.*, 254 N.Y. 366, 173 N.E. 224 (1930); *Goddard v. Chicago & N. W. Ry. Co.*, 104 Ill.App. 526

(1902); *Johnson v. City of Chattanooga*, 183 Tenn. 123, 191 S.W.2d 175 (1945).

4. See, e. g., *Cathey v. Arkansas Power & Light Co.*, 193 Ark. 92, 97 S.W.2d 624 (1936); *Anderson v. Philadelphia Electric Co.*, 2 Pa.D.&C.2d 709, 67 York Leg.Rec. 157 (1954).

5. See *Callen v. Columbus Edison Electric Light Co.*, 66 Ohio 166, 64 N.E. 141 (1902); *Loeber v. Butte General Electric Co.*, 16 Montana 1, 39 P. 912 (1895).

6. See, e. g., *Donalson v. Georgia Power & Light Co.*, 175 Ga. 462, 165 S.E. 440 (1932); *Louisiana Power & Light Co. v. Dileo*, La.App., 79 So.2d 150 (1955); *Koslosky v. Texas Electric Service Co.*, Tex.Civ.App., 213 S.W.2d 853 (1948).

The very nature of the dedication which took place in the instant case seems to dictate the adoption of a view contrary to that of the majority of the Court. The road was dedicated to the public use, not by an express assertion of intent on the part of adjacent landowners, but by user, in accordance with Utah statutory law.[7] While such abandonment and use creates, under Utah law, an implied dedication to the public, it is nonetheless, as recognized both by the parties and by the trial court,[8] in the nature of a prescriptive right only. This Court has unanimously ruled as follows:

> ... [T]he extent of an easement acquired by prescription is measured and limited by the use made during the prescriptive period ... [W]hile the owner of the dominant estate may enjoy to the fullest extent the rights conferred by his easement, he may not alter its character so as to further burden or increase the restriction upon the servient estate.[9]

It would be inexplicably inconsistent to state that, where prescriptive rights are obtained in the form of a regular easement, the owner of the dominant estate is bound by the use which established the easement, while, where prescriptive rights are established by statutory implied dedication, the owner of the dominant estate is confined only to uses consistent with the progress of civilization.

For the foregoing reasons, I would rule that the placement of utility lines along the roadway in question constitutes an additional servitude, not comprehended within the estate held by the county on behalf of the public at the time of its attempted grant of a franchise to defendant Cal–Pac. As such, the attempted franchise grant was void, and the presence of the utility lines on plaintiff's property entitles him to relief. As no finding was made below regarding the amount by which plaintiff is damaged due to defendants' actions, I would remand for further proceedings in ascertainment thereof.

STEWART, J., concurs in the dissenting opinion of HALL, J.

---

7. U.C.A., 1953, 27–12–89.

8. The trial court's finding of fact no. 2 reads as follows: "... [T]he County of Iron has acquired a right–of–way by prescriptive use for roadway purposes over the south end of the above–described property in excess of 33 feet, and being specifically from the south boundary of said property north to the place where the fence on said right–of–way is now located. The rights of Iron County to set easement are strictly prescriptive in nature."

9. *McBride v. McBride*, Utah, 581 P.2d 996 (1978).