OSCN Found Document:OKLAHOMA TURNPIKE AUTHORITY v. VOREL

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 OKLAHOMA TURNPIKE AUTHORITY v. VOREL
2025 OK CIV APP 5
566 P.3d 614
Case Number: 120066
Decided: 07/22/2024
Mandate Issued: 03/06/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2025 OK CIV APP 5, 566 P.3d 614

 
See Okla.Sup.Ct.R. 1.200 before citing.

OKLAHOMA TURNPIKE AUTHORITY, a body corporate and politic Plaintiff/Appellant,
v.
MIKE VOREL, Trustee of the Peggy Lu Vorel Revocable Trust Agreement Dated the 18th Day of February, 2016, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE NATALIE MAI, TRIAL JUDGE

VACATED AND REMANDED FOR FURTHER PROCEEDINGS

Jot Hartley, Travis Hartley, THE HARTLEY LAW FIRM, PLLC, Vinita, Oklahoma, for Plaintiff/Appellant

Colby J. Byrd, Gatlin C. Squires, MCAFEE & TAFT, A PROFESSIONAL CORPORATION, Oklahoma City, Oklahoma, for Defendant/Appellee Mike Vorel, Trustee of the Peggy Lu Vorel Revocable Trust Agreement Dated the 18th Day of February, 2016

JOHN F. FISCHER, JUDGE:

¶1 The Oklahoma Turnpike Authority appeals a judgment in favor of the Peggy Lu Vorel Revocable Trust dated February 18, 2016, entered on a jury verdict in this condemnation case. The dispositive issue is whether the district court correctly construed the allegations in the Authority's petition regarding the scope of the Trust's property taken by the Authority. The district court determined that the description of the property taken included all access from a portion of the Trust's property rather than just access to the limited access turnpike being constructed across the Trust's property. This was error. The judgment is vacated, and this case is remanded for further proceedings consistent with this Opinion. 

BACKGROUND

¶2 On October 27, 2017, the Authority filed a petition in the district court exercising its power of eminent domain to take a portion of the real property owned by the Trust. The legal description of the property taken is contained in
Exhibit A attached to the petition. The Authority took approximately 55 acres of the 285 acres owned by the Trust for the construction of the Kickapoo Turnpike. The Kickapoo Turnpike intersects with the existing Turner Turnpike just east of Luther Road in Oklahoma County. The 55-acre tract bisected the Trust's property leaving approximately 212 acres to the east of the Kickapoo Turnpike and 19 acres to the west of that Turnpike. The parties refer to the 212-acre tract as the "East Remainder," and the 19-acre tract as the "West Remainder." Primarily at issue in this case is the West Remainder.

¶3 Commissioners appointed by the district court appraised the property described in Exhibit A to the Authority's petition. On January 9, 2018, the Commissioners filed their report in which they found just compensation for the 55-acre tract to be $450,000. The Commissioners determined that this was "the value of the property or rights or interest therein," taken for the Kickapoo Turnpike, "as is set forth in Exhibit A."

¶4 The Trust filed exceptions to the Commissioners' report and both parties filed a demand for jury trial. During the trial, the Trust was permitted to argue, based on the district court's legal interpretation of the Authority's petition, that all access from the West Remainder to any abutting road had been taken. The Trust argued that, as a result, the West Remainder was worthless, and introduced evidence regarding the value of the entire West Remainder. The jury found the amount of just compensation for the 55-acre tract and access rights taken by the Authority to be $1,166,940. The Authority appeals the judgment entered on the jury's verdict.

STANDARD OF REVIEW

¶5 "Condemnation proceedings involve both factual determinations and legal rulings." Natural Gas Pipeline Co. of Am. LLC v. Foster OK Res. LP, 2020 OK 29465 P.3d 1206State ex rel. Dep't of Transp. v. Lamar Advert. of Okla., 2014 OK 47335 P.3d 771Florafax Intern., Inc. v. GTE Mkt. Res. Inc., 1997 OK 7933 P.2d 282Snow v. Town of Calumet, 2022 OK 63512 P.3d 369

ANALYSIS

¶6 The Authority's petition states that the Authority is taking property owned by the Trust, and that the property taken is necessary for the construction of a "Limited Access Turnpike." Exhibit A attached to the petition contains a legal description of the property being taken. Exhibit A includes a "metes and bounds" legal description of the 55-acre tract and states that the property within that description is being taken:

together with all abutter's rights, if any, including, without limitation, all rights of access from the remaining portion of the [Trust's] land onto the Limited Access Turnpike to be constructed . . . .

The new Turnpike right-of-way constitutes part of the east border of the West Remainder. 

I. The Authority's Effort to Reform the Legal
Description of the Property Taken

¶7 On July 16, 2021, more than two years after the Commissioners filed their just compensation report, the Authority filed a Motion to Reform Legal Description by which it sought to make clear that the scope of the "all rights of access" described in its petition "was not intended to encompass and/or prevent access [from the West Remainder] to and from Luther Road and/or Northeast 164th Street . . . ." The Authority's motion was forced by the district court's ruling in a related case in which the Authority took property from a different landowner for construction of the Kickapoo Turnpike. That property abutted the west side of Luther Road directly across from the West Remainder. In that case, the same district judge had interpreted the language "together with all abutter's rights, if any, including, without limitation, all rights of access from the remaining portion of the [owner's] land onto the Limited Access Turnpike" as including access from the owner's property to Luther Road and N.E. 164th Street.

¶8 The Authority argued that reformation of its petition was necessary because the district judge's interpretation in the related case of the legal description in Exhibit A resulted from an ambiguity in the language of that description. The Authority sought to resolve that ambiguity by adding language to its petition making it clear that the Trust's access from the West Remainder to Luther Road and N.E. 164th Street was not being taken.

¶9 Attached to the Authority's motion were exhibits showing the Trust's property, the location of the existing and proposed turnpikes and the location of driveways constructed by the Authority to permit access from the West Remainder to Luther Road and N.E. 164th Street. Also attached were the affidavits of Todd Gore and Russell Beaty.

¶10 Mr. Gore's affidavit states that he is the Authority's Chief of Right of Way, that he was familiar with the construction plans for the Kickapoo Turnpike, that the areas of "No Access" are set forth on those plans and do not reflect that the Authority intended to take the Trust's access from the West Remainder to Luther Road or N.E. 164th Street. Mr. Gore supported that conclusion with reference to the exhibits showing the driveways constructed by the Authority from the West Remainder to Luther Road and N.E. 164th Street.

¶11 Mr. Beaty's affidavit states that he was the designer of the Authority's construction plans for the Kickapoo Turnpike. Mr. Beaty confirms that the construction plans do not reflect that the Authority took the Trust's access from the West Remainder to Luther Road or N.E. 164th Street. Mr. Beaty also supported his conclusion that the plans reflect the Trust's "continued right of access" to Luther Road and N.E. 164th Street with reference to the exhibits showing the driveways constructed by the Authority from the West Remainder to Luther Road and N.E. 164th Street.

¶12 The Trust filed a response in which it argued that the Authority could not alter the legal description because it had not objected to the Commissioners' Report. As the Authority has pointed out, one Commissioner testified that the Commissioners did not assess any damage for access from the West Remainder to Luther Road or N.E. 164th Street because they did not interpret the legal description of the property taken to include those rights. Therefore, the scope-of-the-taking issue did not arise until after the Commissioners had filed their report and the district court had ruled in the related case. Nonetheless, the Trust also argued, based on the district court's interpretation in the related case, that the legal description of the property taken was not ambiguous and included all access from the West Remainder to Luther Road and N.E. 164th Street.

I. The District Court's Construction of the Scope of the Taking

¶13 The district court denied the Authority's motion to reform the legal description of the property being taken in an order entered September 3, 2021. On the same day, the court granted the Trust's Sixth Motion in Limine which raised the same issue. The district court ruled: "The scope of the taking in this case is governed by the legal description contained in [the Authority's] Petition." The court found that the legal description was unambiguous and resulted in a taking of all of the Trust's "abutter's rights along the entire border of the taking area." The court also ruled that the Authority was precluded from offering evidence at trial that would show that it did not take the Trust's access from the West Remainder to Luther Road or N.E 164th Street. The district court's construction of the legal description in Exhibit A of the Authority's petition presents a question of law. See Okla. Gas & Elec. Co. v. Miller Bros. 101 Ranch Tr., 1935 OK 66946 P.2d 570

II. The Parties' Positions

¶14 There is no dispute that the metes and bounds legal description in Exhibit A of the Authority's petition accurately describes the 55-acre tract bisecting the Trust's property. The dispute concerns what was taken by the language following that description: "together with all abutter's rights . . . including, without limitation, all rights of access from the remaining portion of the [Trust's] land onto the Limited Access Turnpike to be constructed."

¶15 The Trust contends that the language "all rights of access" describes access from the West Remainder to Luther Road and N.E. 164th Street, in addition to direct access onto the Turnpike from the north and east borders of the West Remainder. The Authority argues, primarily based on the evidence introduced at the hearing on its Motion to Reform Legal Description, that it did not intend to take, has no use for, and the legal description in Exhibit A of its petition does not describe the Trust's access from the West Remainder to Luther Road or N.E. 164th Street. According to the Authority, the legal description in Exhibit A describes the new Turnpike right-of-way across the north and east portions of the West Remainder and access onto the Kickapoo Turnpike from the east border of the West Remainder abutting the new Turnpike.

¶16 Both interpretations cannot be correct. Therefore, unless the Trust's interpretation is compelled by the clear language of Exhibit A, the language is ambiguous, and that ambiguity must be resolved by this Court. Miller Bros., 1935 OK 669

III. The Authority Did Not Take "All Access" from the West Remainder

¶17 The Trust's position, as it argues, depends on a grammatical construction by which the phrase "including without limitation, all rights of access from the remaining portion of the [Trust's] land" does not modify the immediately preceding phrase "all abutter's rights." According to the Trust, "including" is a "term of enlargement" describing additional rights taken beyond the Trust's "abutter's rights" to the 55-acre tract. As interpreted by the Trust, then, Exhibit A to the Authority's petition describes a taking of all of the Trust's "abutter's rights," and "all rights of access from" the West Remainder.

¶18 The Trust does not cite any specific grammatical rule supporting its construction, relying instead on "plain English grammar." However, there are applicable rules of grammar, and they do not support the Trust's construction of Exhibit A.

¶19 "The word 'Including,' is the participle form of the verb 'include' . . . ." Maben v. Rosser, 1909 OK 211103 P. 674What is a Participle? (https://www.grammarly.com/blog/participle/). Directly next to the phrase "including, without limitation" is the noun "rights," modified by the adjective, "abutter's." The phrase beginning "including without limitation" could, according to the Trust's construction, modify the metes and bounds description of the 55-acre tract. However, in common usage modifying phrases "are placed right beside the noun they're modifying." Lindsey Kramer, What Are Modifiers? (https://www.grammarly.com/blog/modifiers). If, as the Authority contends, "including without limitation" modifies "all abutter's rights," its grammatical placement is correct. The Trust's construction results in a "misplaced modifier." Id.

¶20 The Trust's grammatical argument, at best, demonstrates an ambiguity in the language. It does not determine the proper construction of the language. Consequently, the district court erred in concluding that the legal description in Exhibit A is unambiguous. Where language is "susceptible of two constructions," this Court is required to determine which one is correct. Okla. Gas & Elec. Co. v. Miller Bros. 101 Ranch Tr., 1935 OK 66946 P.2d 570

¶21 In condemnation cases, the Authority gets to decide what property it is going to take. "A petition . . . seeking condemnation of private property is sufficient which describes the specific property sought to be taken . . . ." McCrady v. Western Farmers Elec. Coop., 1958 OK 43323 P.2d 356State of Oklahoma, ex rel. Dep't of Transp. v. Mehta, this Court held:

Neither a landowner nor a trial judge may expand the taking beyond that specified in the condemnation petition. . . . It is the condemnor who determines, and thereafter petitions to condemn, the land they deem necessary for the purpose of the public use at issue.

Mehta, 2008 OK CIV APP 25180 P.3d 1214

A.

¶22 First, "abutter's rights" is not a defined term in the Authority's petition. However, the word "abut" means: "To reach; to touch. To touch at the end; be contiguous; join at a border or boundary." Abut, Black's Law Dictionary (5th ed. 1979). Generally, with respect to statutes and contracts, the words used "are to be understood in their ordinary sense . . . ." See 25 O.S.2021 § 1

¶23 Although not defined in the Authority's petition, the term "abutter's rights" has been the subject of litigation in this State. See State ex rel. Dep't of Highways v. Allison, 1962 OK 151372 P.2d 850Accord Riverbend Land, LLC v. First American Title Ins. Co., No. CIV-18-247-F, slip op. at 3, 2023 WL 5254718, *3 (W.D. Okla. Aug. 15, 2023). The legal description in Allison "described the lands to be taken . . . by metes and bounds, 'together with all abutters rights, including all rights to access from the remaining portion of defendants' land onto the limited access highway to be constructed on the above described property, including all rights to light, air or view therefrom.'" Allison, ¶ 2, 372 P.2d at 851. It did not include the owner's right to erect signs on the land not taken and introduction of evidence of the value of those "sign rights" constituted reversible error. Id. ¶ 7, 372 P.2d at 852.

¶24 Similarly, Mr. Gore testified, without contradiction, that "abutter's rights" consisted of access to an adjoining road, as well as "light, air and view." The Oklahoma Supreme Court has also observed that in condemnation cases:

abutting owners have two distinct types of rights in public streets and highways: (1) a public right enjoyed in common with the general public; (2) private rights arising from ownership of contiguous property which exist regardless of ownership of the fee, including ingress and egress, right to have the street kept open as a thoroughfare, and to use the right of way not inconsistent with public use.

In re Grand River Dam Auth., 1971 OK 48484 P.2d 505

¶25 Clearly, the Authority intended to take the right to erect structures that might obstruct the "light, air or view" onto or from the West Remainder. And, the Authority intended to take the Trust's right of ingress and egress from that portion of the West Remainder contiguous to, or "abutting," the new Turnpike. But the Trust argues that the Authority went further, taking all "access from the . . . West Remainder to the Kickapoo Turnpike."

¶26 It is true that as part of the Kickapoo Turnpike construction the existing rights-of-way for Luther Road and N.E. 164th Street were altered to expand and/or lower the existing roads to accommodate the new Turnpike. However, these rights-of-way were already owned by Oklahoma County and any reduced access from the West Remainder was temporary. In addition, the Authority's construction plans show that the Trust retained access to both roads from the West Remainder across driveways built by the Authority during or after construction of the new Turnpike was completed. 

¶27 Further, the Trust's position suffers from a logical inconsistency. Before construction of the Kickapoo Turnpike began, the Trust had access to the existing Turner Turnpike from the West Remainder. The Authority had taken the Trust's direct access onto the Turner Turnpike from the north border of the West Remainder. It had not taken "all access" to the Turner Turnpike from the West Remainder through Luther Road or N.E. 164th Street. The Trust does not argue that the Authority "took" its access to the Turner Turnpike in this case. Therefore, if the Trust has access to the existing Turner Turnpike from the West Remainder through Luther Road or N.E. 164th Street, it must have the same access from those roads to the nearest access point on Kickapoo Turnpike.

¶28 The Kickapoo Turnpike, like the Turner Turnpike, is a limited access turnpike; the Authority gets to decide where the Trust can access that Turnpike. It has decided that the Trust can access the Kickapoo Turnpike from any designated access gate through Luther Road or N.E. 164th Street. It just does not have access to that Turnpike across the east and west borders of the Turnpike that bisect the Trust's property. 

B.

¶29 Second, the Trust's construction results in an unnecessary and unexplained redundancy. If the legal description in Exhibit A to the Authority's petition describes "including, without limitation, all access" from the West Remainder, why was it necessary for the Authority to also take "all abutter's rights" within the West Remainder? If, "all access" from the West Remainder was taken by the "including, without limitation" phrase, as the Trust contends, there were no "abutter's rights" left to condemn, except for the "light, air and view" rights about which the Trust does not complain. Rules of statutory construction provide helpful guidance here. A construction which "leads to an inconsistent or incongruent result between provisions" should be avoided. Hogg v. Oklahoma Cnty. Juv. Bureau, 2012 OK 107292 P.3d 29

C.

¶30 Third, the Trust's grammatical argument depends on a possible but unpersuasive use of the word "including." The Trust contends that "the phrase including, but not limited to, is obviously a term of enlargement." (emphasis in original). According to the Trust, the term enlarges or adds to the "abutter's rights" being taken to include "all rights of access" from the West Remainder. The Trust finds authority for that use of "including" in two cases, In re Central Airlines, Inc., 1947 OK 312185 P.2d 919Hedrick v. Comm'r of the Dep't of Pub. Safety, 2013 OK 98315 P.3d 989

¶31 Although the Central Airlines Court recognized that the word "include" could have "two shades of the same meaning," using the word in its cumulative sense, as the Trust urges, to enlarge the abutter's rights being taken is not to use the word in "'its ordinary sense,'" but to use the word in "'its exceptional sense, as the dictionaries and cases indicate.'" Central Airlines, 1947 OK 312Montello Salt Co. v. State of Utah, 221 U.S. 452 (1911)). As noted by Justice Edmondson: "The word 'including' may be used to classify an item [here, all rights of access] that follows 'including' as a part of the class of items [here, abutter's rights] which preceded the word." Hedrick, 2013 OK 98
¶ 14, n.21, 315 P.3d at 995 n.21 (Edmondson, J., concurring in result). Accord Edmondson v. Pearce, 2004 OK 2391 P.3d 605See also Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.").

¶32 "Including should not be used to introduce an exhaustive list, for it implies that the list is only partial." Bryan A. Garner, A Dictionary of Modern Legal Usage 287 (Oxford University Press 1987). "[T]he word include does not ordinarily introduce an exhaustive list . . . ." Antonin Scalia and Bryan A. Garner, Reading Law, The Interpretation of Legal Texts 132 (Thompson/West 2012). The phrase "including, but not limited to" is often added out of caution to "defeat" an interpretation that would exclude items in the class not mentioned after the phrase. Id. at 132-33.

¶33 Used in its ordinary sense, the phrase identifies, one, but not all, of the Trust's "abutter's rights" being taken, that is, its specific right of access onto the Kickapoo Turnpike from the portion of the West Remainder contiguous with, or "abutting" the Turnpike right-of-way. As discussed in In re Grand River Dam Authority, 1971 OK 48484 P.2d 505

D.

¶34 Fourth, when a condemnor's petition is subject to two possible interpretations, "the construction will be adopted which is most favorable to the plaintiff, that is, the construction will be given which will tend more to restrict plaintiff's demands." Okla. Gas & Elec. Co. v. Miller Bros. 101 Ranch Tr., 1935 OK 66946 P.2d 570

¶35 Guided by these principles, the most reasonable construction of the legal description in Exhibit A to the Authority's petition results in an interpretation where "including, without limitation" modifies "abutter's rights," both of which describe access "onto the Limited Access Turnpike" from the east border of the West Remainder. With that interpretation, the petition does not describe a taking of the Trust's access from the West Remainder to Luther Road or N.E. 164th Street.

¶36 We hold that the district court erred in construing the legal description in Exhibit A to the Authority's petition as including all access from the West Remainder to Luther Road or N.E. 164th Street. As a result of that error, the district court also erred in: (1) denying the Authority's Motion to Reform Legal Description, (2) granting the Trust's Sixth Motion in Limine, (3) permitting the Trust, over the Authority's objection, to introduce evidence regarding the value of the entire West Remainder and to argue that all access from the West Remainder was taken, and (4) denying the Authority the opportunity to argue that no access from the West Remainder to Luther Road or N.E. 164th Street was taken. Those errors resulted in a trial premised on fundamental legal error requiring vacation of the judgment in favor of the Trust and remand of this case for further proceedings consistent with this Opinion. See Okla. Gas & Elec. Co. v. Miller Bros. 101 Ranch Tr., 1935 OK 66946 P.2d 570See also, State of Oklahoma, ex rel. Dep't of Transp. v. Mehta, 2008 OK CIV APP 25180 P.3d 1214

V. The Trust's Motion to Dismiss this Appeal

¶37 Finally, the Trust has filed a motion to dismiss this appeal citing Supreme Court Rule 1.11(e), which requires an appellant to cite, in its brief-in-chief, where in the record objectionable testimony appears. The Trust argues that the Authority did not do so and, therefore, has waived any error by the district court in admitting or excluding evidence as to whether the Authority took all of the access from the West Remainder to Luther Road and N.E. 164th Street.

¶38 The Trust's argument misses the point. The Trust introduced no testimony at trial to show what had been taken because the district court had already ruled, as a matter of law, that the Authority had taken all access from the West Remainder. The Trust's trial evidence was offered to establish the value of the property taken. That testimony was objected to at trial and is cited at page 6 of the Authority's Brief-in-Chief.

¶39 In this appeal, the Authority's complaint about the admission and exclusion of evidence is that it resulted from the district court's erroneous legal conclusion that the Authority took all of the Trust's access from the West Remainder to Luther Road and N.E. 164th Street. That error originated on September 3, 2021, when the district court denied the Authority's motion attempting to correct the district court's previous erroneous construction of the scope of the taking. That error of law was perpetuated when the district court granted the Trust's Sixth Motion in Limine and then permitted the Trust to argue that the Authority took all of the Trust's access to Luther Road and N.E. 164th Street from the West Remainder.

¶40 Although this ruling occurred in the context of a motion in limine, "a party aggrieved by an order in limine" may preserve appellate review of such rulings "by objecting when the challenged evidence or testimony is admitted . . . ." Covel v. Rodriguez, 2012 OK 5272 P.3d 705See, e.g., Tr. Vol. 2 at 307 (where counsel "re-urged" the Authority's Motion to Reform Legal Description and its motion in limine, which sought to limit evidence that the Authority took the Trust's access to Luther Road and N.E. 164th Street from the West Remainder).

¶41 The Summary of the Record in the Authority's Brief-in-Chief provides "a full understanding of the questions presented to this Court for decision." Okla. Sup. Ct. R. 1.11(e)(1), 12 O.S.2021, ch.15, app. 1. The Trust's Motion to Dismiss Appeal is denied. 

CONCLUSION

¶42 In this condemnation case, the district court erred in construing the scope of the property being taken by the Oklahoma Turnpike Authority for the construction of the Kickapoo Turnpike. That error resulted in the jury being permitted to award just compensation for property belonging to the Peggy Lu Vorel Revocable Trust that was not taken. The judgment in favor of the Trust is vacated and this case is remanded for further proceedings consistent with this Opinion.

¶43 VACATED AND REMANDED FOR FURTHER PROCEEDINGS. 

BARNES, C.J., and WISEMAN, P.J., concur.

FOOTNOTES

infra, in Part V. of this Opinion.

In re Grand River Dam Auth., 1971 OK 48484 P.2d 505

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105