180 P.3d 1214 (2008)
2008 OK CIV APP 25
STATE of Oklahoma, ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff/Appellant,
v.
Kishor and Jyotsna MEHTA, husband and wife; and Magic Circle Properties, LLC, Defendants/Appellees, and
Eller Media Company and The Tulsa County Treasurer, Defendants.
No. 101,226.
Court of Civil Appeals of Oklahoma, Division No. 2.
February 11, 2008.
Kelly F. Monaghan, John M. Folks, Holloway & Monaghan, Tulsa, OK, for Plaintiff/Appellant.
Randall S. Pickard, Tulsa, OK, for Defendants/Appellees.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 2.
JERRY L. GOODMAN, Presiding Judge.
¶ 1 The State of Oklahoma, ex rel. Department of Transportation (ODOT or Department) appeals the trial court's August 25, 2004, order denying its exceptions to the Commissioners' Second & Corrected Report. Based on our review of the record on appeal and applicable law, we reverse in part and remand for further proceedings consistent with this opinion.

FACTS
¶ 2 On September 28, 2001, ODOT filed a petition pursuant to 69 O.S.2001, § 1203 seeking to acquire real property in Tulsa County, Oklahoma, for the purpose of constructing and maintaining the state transportation system. The petition alleged ODOT and the Defendants Kishor and Jyotsna Mehta (the Mehtas) and Eller Media Company (Eller) had failed to reach an agreement regarding the Department's acquisition of the property. ODOT's petition identified two (2) tracts of land to be condemned, a taking of 3.69 acres in fee simple with an additional .31 acres for a temporary easement. The petition further identified a billboard located on the property. The petition asserted the Defendants owned or claimed some interest in the property.[1]
¶ 3 On October 23, 2001, the trial court entered an order appointing three (3) commissioners, *1217 instructing them to inspect the property and determine just compensation for the legally described property set forth in ODOT's petition. On February 6, 2002, the Commissioners filed their Report finding just compensation for the taken property to be $710,000.00.
¶ 4 On February 15, 2002, the Mehtas filed an exception to the Report asserting the Commissioners had failed to separately identify the amount of compensation awarded to each Defendant for their property interest. The Mehtas' requested the court order the Commissioners to file an amended report separately identifying the sums awarded. Eller filed an exception on March 6, 2002, also requesting the court order the Commissioners to separately identify the compensation awarded.
¶ 5 On April 23, 2002, ODOT filed a motion for partial summary judgment against the Mehtas and Eller, asserting that in 1962 the State of Oklahoma had been granted a perpetual highway easement on the property the billboard was located on. ODOT stated it named Eller as a defendant in the condemnation action because it mistakenly believed the billboard was located on the Mehtas' property and that the billboard would have some value in the condemnation proceeding. Having realized its mistake, ODOT asserted Eller was not entitled to compensation for the unlawfully placed sign. In response, Eller asserted, inter alia, that a motion for summary judgment was not authorized in condemnation proceedings, issues of fact existed regarding whether ODOT had abandoned the property, and ODOT should have filed an exception to the Commissioners' Report.
¶ 6 The Mehtas also objected to the motion, as well as filing their own cross-motion for partial summary judgment. Although the Mehtas acknowledged ODOT was granted the easement in 1962, they asserted ODOT had abandoned the easement or, in the alternative, that they owned the land through adverse possession. The Mehtas further alleged ODOT waived its right to object by failing to timely file an exception to the Commissioners' Report. The trial court denied the motions. ODOT and Eller subsequently settled and filed a joint dismissal with prejudice and release of claims on February 26, 2003.
¶ 7 Thereafter, the trial court granted the Mehtas' exception, and issued new instructions to the Commissioners over ODOT's objections. The new instructions directed the Commissioners to value four (4) properties described, in part as: 1) Property A: 3.69 acres, ". . . all as stated in the condemnation petition filed herein."; 2) Property B: .31 acres for a temporary easement, ". . . all as stated in the condemnation petition filed herein."; 3) Property C: a triangular-shaped parcel of land adjacent to Property A; and 4) Property D: a billboard located on Property C. Neither Property C nor Property D referenced the condemnation petition. ODOT objected to the inclusion of Property C and Property D in the instructions, again asserting the Department owned Property C, upon which the billboard was located.
¶ 8 On April 8, 2004, the Commissioners filed their Second Report, corrected on May 4, 2004, ("Second and Corrected Report") finding the total compensation due was $710,000.00, apportioned among the property as follows: Property A: 3.69 acres ($587,000.00); Property B: .31 acres taken for a temporary easement ($8,000.00); Property C: triangular lot adjacent to Property A ($80,000.00); Property D: billboard located on Property C ($35,000.00).
¶ 9 On May 10, 2004, ODOT filed exceptions to the Second and Corrected Report, asserting the instructions were unlawful because there was no authority for separate valuations. ODOT further asserted the Report was erroneous because it awarded compensation for property the Department owned and for property unlawfully located thereon.
¶ 10 On May 14, 2004, the Mehtas filed a demand for jury trial. ODOT filed a demand for jury trial on May 26, 2004. On August 25, 2004, the trial court denied ODOT's exceptions to the Commissioners' Second and Corrected Report. ODOT appeals.

STANDARD OF REVIEW
¶ 11 As there are no material facts in dispute, this appeal presents only a question *1218 of law.[2]See Baptist Bldg. Corp. v. Barnes, 1994 OK CIV APP 71, ¶ 5, 874 P.2d 68, 69-70. Contested issues of law are reviewable in all actions by a de novo standard. Weeks v. Cessna Aircraft Co., 1994 OK CIV APP 171, ¶ 5, 895 P.2d 731, 733 (approved for publication by the Oklahoma Supreme Court). An appellate court claims for itself plenary, independent, and non-deferential authority to re-examine legal rulings. Id.

ANALYSIS
¶ 12 On appeal, ODOT contends the trial court erred in denying its exceptions to the Commissioners' Second and Corrected Report. First, ODOT asserts the trial court erroneously instructed the Commissioners to assess, value, and award compensation for Property C and Property D even though Property C was not included in the petition to condemn and is owned by the Department and Property D is unlawfully located thereon. For their second assertion of error, ODOT maintains the Commissioners' award was unlawful because there is no authority for separate valuations of various property interests.
¶ 13 Prior to addressing the merits of ODOT's appeal, we must initially determine whether the appeal is properly before this Court.[3] ODOT filed this appeal upon the denial of its exceptions to the Commissioners' Second and Corrected Report, citing 69 O.S. 2001, § 1203(f) as authority. Section 1203(f) provides:
(f) Either party aggrieved may appeal to the Supreme Court from the decision of the district court on exceptions to the report of commissioners, or jury trial;
¶ 14 On October 31, 2006, this Court issued a show cause order directing the parties to address the appealability of the trial court's August 25, 2004, order denying ODOT's exceptions. The parties complied. The Mehtas assert ODOT's exceptions ask for summary adjudication of issues of fact that are the subject of ODOT's demand for jury trial and that once a demand for jury trial has been made, the issues are waived and the action must proceed to jury trial. Thus, the appeal is improper. ODOT disagrees and contends the statutory language of § 1203(f) is clear and unambiguous, and that the legislature intended for either party aggrieved by the decision on the exceptions to have the right of immediate appeal.
¶ 15 Despite the general statement of authority to appeal set out in § 1203(f), this Court has jurisdiction to decide only those appeals from the trial court's judgments, final orders, and certain interlocutory orders. See 12 O.S.2001, § 952.
¶ 16 In the present case, the order appealed is not an interlocutory order or a final judgment, but a determination of certain issues presented to the trial court. Because the parties have filed a demand for jury trial, the issue of just compensation for the property taken and damages to the remainder, if any, has been reserved for the jury's determination. Accordingly, the issue before this Court is whether the order denying ODOT's exceptions is a final order over which we have jurisdiction.
¶ 17 Condemnation, also known as eminent domain, is the power to take private property for the public good. Williams v. State ex rel. Dept. of Transp., 2000 OK CIV APP 19, ¶ 13, 998 P.2d 1245, 1248 (citing Harn v. State ex rel. Williamson, 1939 OK 40, 184 Okla. 306, 87 P.2d 127). The right of condemnation is a fundamental attribute of the sovereign state. City of Tahlequah v. Lake Region Elec, Co-op., Inc., 2002 OK 2, ¶ 7, 47 P.3d 467, 471. This right is restricted by the provisions of Oklahoma's Constitution, art. 2, § 24, which provides in part that "[p]rivate property shall not be taken or damaged for public use without just compensation."
¶ 18 A condemnation action brought to obtain private property for public use is a special proceeding strictly controlled by the Constitution and statutes prescribed by the *1219 Legislature. See Public Serv. Co. of Okla. v. B. Willis, C.P.A., Inc., 1997 OK 78, ¶ 16, 941 P.2d 995, 999. The action must be carried out in accordance with Constitutional mandates and legislatively prescribed procedure. Id. (citing Carter v. City of Oklahoma City, 1993 OK 134, 862 P.2d 77).
¶ 19 The procedure for ODOT to condemn private land for public use is found at 69 O.S.2001, § 1203 et seq. There are only three (3) pleadings authorized to be filed in a condemnation proceeding: (1) the petition, (2) an exception to the commissioners' report, and (3) a demand for jury trial. Board of Cty. Comm'rs of Creek County v. Casteel, 1974 OK 31, ¶ 15, 522 P.2d 608, 611. Whether additional pleadings may be filed rests in the discretion of the trial court. Rummage v. State ex rel. Dept. of Transp., 1993 OK CIV APP 39, ¶ 18, 849 P.2d 1109, 1112 (citing Incorporated Town of Pittsburg v. Cochrane, 1948 OK 121, 200 Okla. 497, 197 P.2d 287).
¶ 20 After a petition for condemnation has been filed, the commissioners appointed, and the commissioners' report filed, "Art. 2, § 24, Okl. Const., allows a judicial determination of the necessity of taking and of the nature of the estate taken. . . ." through the filing of an exception. Elliott v. City of Guthrie, 1986 OK 59, ¶ 6 fn. 6, 725 P.2d 861, 862 fn. 6 (citing Harn v. State, 1939 OK 40, 184 Okla. 306, 87 P.2d 127; Fischer v. Oklahoma City, 1946 OK 235, 198 Okla. 22, 174 P.2d 244) (addressing the analogous procedure under 66 O.S.1981, § 55); Blankenship v. Bone, 1974 OK CIV APP 54, 530 P.2d 578. Disputes regarding the propriety or legality of the taking, including the right to condemn, the necessity of the taking, the reasonableness of the taking, the scope or the nature of the taking, can only be brought to issue by filing an exception to the commissioners' report in accordance with § 1203(e).
¶ 21 Pursuant to 12 O.S.2001, § 952(b)(1), an order adjudicating an exception challenging the right to condemn, i.e., an issue regarding the taking of a property owner's interest, is appealable as a final order. See McMillian v. Holcomb, 1995 OK 117, ¶ 3, 907 P.2d 1034, 1035-36 (citing Jerry Scott Drilling Co., Inc. v. Scott, 1989 OK 131, 781 P.2d 826); Oklahoma Gas & Elect. Co. v. Chez, 1974 OK 99, 527 P.2d 165 (trial court's decision in a condemnation proceeding adjudicating the question of the right to condemn is a final order from which an appeal will lie); Watchorn Basin Assn. v. Oklahoma Gas & Elect. Co., 1974 OK 27, 525 P.2d 1357 (The decision of the trial tribunal in the condemnation proceedings adjudicating the question of the right to condemn the property taken is a final order from which an appeal to this Court will lie); Delhi Gas Pipeline Corp. v. Swanson, 1974 OK 26, 520 P.2d 670 (Questions concerning the right to condemn should be brought to the attention of the trial court by objecting to the report of the commissioners and the trial court's ruling upon such objections is an appealable order); Town of Ames v. Wybrant, 1950 OK 197, 203 Okla. 307, 220 P.2d 693 (The decision of the district court in condemnation proceedings adjudicating the question of the right to condemn is a final order from which an appeal to this court will lie); Wrightsman v. Southwestern Nat. Gas Co., 1935 OK 724, 173 Okla. 75, 46 P.2d 925 (The decision of the district court in condemnation proceedings on question relating to the right to condemn may be brought to this court for review on appeal) (all citations omitted). Accordingly, "where the right to condemn itself or the necessity of the taking has been properly challenged by exceptions to the report of commissioners would a trial court ruling on those exceptions be subject to immediate appeal to this Court." Scott, 1989 OK 131, ¶ at 9, 781 P.2d at 828; see also Casteel, 1974 OK 31, at 118, 522 P.2d at 611 (citing Town of Ames v. Wybrant, 1950 OK 197, 203 Okla. 307, 220 P.2d 693) ("[W]hen any question concerning the right to take by condemnation is raised [by exception], it must be finally determined judicially, prior to a final determination of any question concerning the amount of damages") (emphasis added). This reinforces the principle that all issues, except just compensation and damages to the remainder, should be resolved prior to the jury trial.
¶ 22 Ordinarily, it is the property owner who challenges the taking in a condemnation proceeding. Under the peculiar facts presented in this case, ODOT, the condemning authority, has objected to the taking. *1220 More specifically and most importantly, ODOT has challenged the scope of the taking as expanded by the trial court in the amended instructions to the Commissioners. Accordingly, that portion of ODOT's exception which challenged the scope of the taking is immediately appealable before this Court as a final order.
¶ 23 Conversely, the trial court's denial of ODOT's exception challenging the Commissioners' Report which apportioned the compensation award in contravention to the "unit rule" is not immediately appealable as a final order.[4] After the Commissioners filed their Second and Corrected Report, both the Mehtas and ODOT demanded a jury trial, thereby bringing to issue just compensation and damages. When a timely demand for jury trial has been filed, the Commissioners' Report does not end the proceedings. See Jerry Scott, 1989 OK 131, ¶ at 8, 781 P.2d at 828. "The appropriate amount of damages must still be fixed by a jury as allowed in the statutory scheme. Thus, in the normal situation where a jury assessment has been demanded, only where the jury has finally determined the amount of compensation will the case be in a posture for appeal to this Court." Id.
¶ 24 Furthermore, ODOT's exception challenging the apportioning of the award became immaterial and moot upon the parties' demands for jury trial. The Commissioners' award will no longer be relevant when superseded by the jury's verdict. See Owens v. Oklahoma Turnpike Auth., 1954 OK 345, ¶ 10, 283 P.2d 827, 831; City of Oklahoma City v. Garnett, 1956 OK 137, ¶ 5-7, 296 P.2d 766, 767. The duty to apportion the award among the different parties according to their respective rights is in the trial court. The condemning authority has no interest in the apportionment of damages. Grand River Dam Auth. v. Gray, 1943 OK 219, at ¶ 9, 138 P.2d at 103 (citing State ex rel. McCaskill v. Hall, 325 Mo. 165, 28 S.W.2d 80 (1930)). Furthermore, the Commissioners' Report is not competent or admissible evidence at the jury trial. Richardson, 1991 OK CIV APP 100, at ¶ 6, 818 P.2d at 1258 (citing Oklahoma Turnpike Auth. v. Daniel, 1965 OK 7, 398 P.2d 515); Wichita Falls & N.W. Ry. Co. v. Munsell, 1913 OK 373, 38 Okla. 253, 132 P. 906. Accordingly, the trial court's order denying ODOT's exception challenging the apportionment of the award is not subject to immediate appellate review. Therefore, the issue is not properly before this Court.
a. Property to be Condemned
¶ 25 In the typical condemnation proceeding, there is no controversy between the condemnor and condemnee over ownership of the property to be condemned. One cannot condemn a property that he owns.
[T]he institution of the proceeding admits the ownership. The condemnor cannot claim the beneficial ownership of land and at the same time assert that the condemnee claims all or some part of that interest; the proceeding in condemnation cannot be employed as a means to quiet title; and the right to exercise the power of eminent domain is dependent entirely upon the ownership being in some one other than the condemnor; the power to condemn negatives ownership in the condemnor. Colorado M. Ry. Co. v. Croman, 16 Colo. 381, 27 P. 256; Houston North Shore R. Co. v. Tyrrell, 128 Tex. 248, 98 S.W.2d 786, 108 A.L.R. 1508; 29 C.J.S. Eminent Domain § 260, p. 1232; 18 Am. Jur. 716.
Grand River Dam Auth. v. Simpson, 1943 OK 149, ¶ 18, 192 Okla. 338, 136 P.2d 879, 881 (emphasis added). If a controversy over title arises, it is typically among competing condemnees.
¶ 26 In a condemnation petition, the condemnor, inter alia, describes the specific property to be condemned and identifies the owner(s) and all others persons or entities that may have an interest in the property. Public Serv. Co. of Oklahoma v. Willis, 1997 OK 78, ¶ 11, 941 P.2d 995, 999 (citing McCrady *1221 v. Western Farmers Electric Cooperative, 1958 OK 43, 323 P.2d 356). Ordinarily, absent an amendment to the petition, the only property a condemnor may condemn is that described in the petition. 29A C.J.S. Eminent Domain § 365. Neither a landowner nor a trial judge may expand the taking beyond that specified in the condemnation petition. Id. It is the condemnor who determines, and thereafter petitions to condemn, the land they deem necessary for the purpose of the public use at issue. See Duke Power Co. v. Herndon, 26 N.C.App. 724, 217 S.E.2d 82 (1975); Carolina Power & Light Co. v. Creasman, 262 N.C. 390, 137 S.E.2d 497 (1964); State, by State Road Comm'n. V. Bouchelle, 137 W.Va. 572, 73 S.E.2d 432 (1952). The trial court has no power to require a condemnor to amend the petition to include property not previously identified and described in the petition. 29A C.J.S. Eminent Domain § 365. The taking, as described in the petition, may be properly challenged by the condemnee(s) by excepting to the commissioners' report.
¶ 27 However, a property owner is entitled to just compensation not only for the property taken, but also for damages to the owner's remaining property not taken, i.e., "damages to the remainder." State ex rel. Dept. of Transp. v. Kelly, 2007 OK CIV APP 25, ¶ 8, 156 P.3d 734, 736 (citing Williams Nat. Gas Co. v. Perkins, 1997 OK 72, 952 P.2d 483). Just compensation means "the value of the property taken, and in addition, any injury to any part of the property not taken." Id. at ¶ 7, 156 P.3d at 737.
¶ 28 In the present case, ODOT's petition for condemnation provided a specific description of two (2) properties it sought to condemn: 3.69 acres in fee simple and an additional .31 acres for a temporary easement, what had been termed Property A and Property B by the trial court. The petition listed the Mehtas and Eller as defendants who "own or claim some interest in said property." When ODOT realized Eller's billboard was located on Department-owned property and not on property to be condemned, ODOT sought summary adjudication against Eller.[5] The trial court denied the motion.[6] ODOT and Eller subsequently settled and Eller was dismissed with prejudice.
¶ 29 However, to determine and properly challenge the nature of the estate taken, ODOT should have filed an exception to the original Commissioners' Report pursuant to § 1203(e), objecting to the taking of Property C and Property D and the resulting awards of compensation. See Elliott, 1986 OK 59, at ¶ 6 fn. 6, 725 P.2d at 863 fn. 6 (citing article 2, § 24, Okl. Const., allows a judicial determination of the necessity of the taking and of the nature of the estate taken when private property is condemned for public use) (citations omitted). The failure to follow § 1203(e) resulted in ODOT waiving its right to a hearing on the estate taken. Id. (addressing the analogous procedure under 66 O.S.1981, § 55).
¶ 30 Notwithstanding ODOT's failure to file an exception to the original Report, ODOT did not waive its right to except upon the filing of the Commissioners' Second and Corrected Report. ODOT properly filed an exception within thirty (30) days of the filing, objecting to the expanded scope of the taking, i.e., the trial court's inclusion of Property C and Property D in the description of the property taken. ODOT further objected to the resulting appraisal and award of compensation to the Mehtas and Eller for Property C and Property D, respectively. As previously discussed, upon the trial court's denial of the exception, the order is a final order subject to immediate appellate review.
¶ 31 We reject the Mehtas' assertion ODOT waived its exception when it filed a demand for jury trial. A demand for jury trial reserves only the issue of compensation and damages to the remainder. When a question concerning the taking is raised, "it must be finally determined judicially, prior to a final determination of any question concerning the amount of damages." See Casteel, 1974 OK 31, at ¶ 18, 522 P.2d at 611 (citing *1222 Town of Ames v. Wybrant, 1950 OK 197, 220 P.2d 693). Thus, ODOT's exception challenging the taking of Property C and Property D was not waived by its May 26, 2004, demand for jury trial, and the appeal remains proper before this Court for review.
¶ 32 Upon reviewing the record on appeal, we agree with ODOT that the trial court erred in denying its exception challenging the taking of Property C and the resulting awards of compensation to the Mehtas and Eller for Property C and Property D, respectively. The record provides ODOT owns Property C. The record further provides the condemnation petition did not include a description of or otherwise seek to condemn Property C. Property D is located unlawfully on Property C. In addition, ODOT and Eller have resolved their dispute over Property D and Eller has been dismissed from the present proceedings. The trial court's inclusion of property not described in the condemnation petition improperly expanded the scope of the taking beyond that contemplated and sought by ODOT. This was error.
¶ 33 It is the condemning authority who determines what property it deems necessary for the purpose of the public use at issue, subject to exceptions by the property owner challenging the necessity or legality of the taking. In addition, as discussed below, the Mehtas' claims of ownership of Property C are improper in a condemnation proceeding and cannot be used to expand the scope of a taking sought by a condemning authority. The trial court's attempt to expand the scope of the taking beyond that described and sought in the petition for condemnation was improper. Accordingly, the trial court erred in denying ODOT's May 10, 2004, exception objecting to the taking of Property C and the resulting awards of compensation. Neither the Mehtas nor Eller is entitled to just compensation or damages for Property C or Property D.
b. Inverse Condemnation
¶ 34 We acknowledge a dispute over the ownership of Property C has arisen between ODOT and the Mehtas. Although the Mehtas concede ODOT was granted a highway easement in 1962 covering Property C, they assert ODOT has abandoned the easement or, in the alternative, that they own the property through adverse possession.
¶ 35 To challenge ODOT's ownership of Property C, the Mehtas must file an inverse condemnation action. "In an action for inverse condemnation, where one claiming to be the owner of property seeks to recover damages . . . for the taking of his property, his ownership or interest in the property must necessarily be established in order to enable him to recover." Incorporated Town of Pittsburg v. Cochrane, 1948 OK 121, ¶ 8, 200 Okla. 497, 197 P.2d 287, 289-90. Thus, in inverse condemnation proceedings, whether there is a taking of a property owner's property is a critical issue and, unless confessed, is a fact question which must be tried to a jury. Carter v. City of Oklahoma City, 1993 OK 134, ¶ 15, 862 P.2d 77, 81; Henthorn v. City of Oklahoma City, 1969 OK 76, ¶ 14, 453 P.2d 1013, 1016. The amount of damages if a taking occurred is also a fact question for the jury. Calhoun v. City of Durant, 1998 OK CIV APP 152, ¶ 5, 970 P.2d 608, 611.
¶ 36 Upon the filing of a separate inverse condemnation proceeding, the Mehtas may assert their claim of ownership. However, such claim is improper in a condemnation proceeding. We express no opinion on the merits of the Mehtas' claim of ownership.
¶ 37 REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
WISEMAN, J., concurs, and FISCHER, J., dissents.
FISCHER, J., dissenting.
¶ 1 respectfully dissent from the Majority's Opinion, not because I disagree with the discussion of the law that will ultimately decide this case, but because I do not find an appealable order before this Court and would dismiss the appeal on that basis.

*1223 BACKGROUND FACTS
¶ 2 The Oklahoma Department of Transportation (ODOT) filed its petition in this action on September 28, 2001, pursuant to 69 O.S.2001 § 1203, seeking to condemn property owned by Kishor and Jyotsna Mehta. ODOT's petition identified two parcels of land to be condemned. The first parcel, described in the trial court pleadings as Property A, is a 3.69-acre tract of land in Lot 1, Magic Circle South addition, Tulsa County, Oklahoma. Property B in the trial court pleadings is a .31-acre parcel to be used for a temporary construction easement and which abuts part of the south border of Property A. Both parcels are located in a 6.51-acre tract of land in Lot 1 owned by the Mehtas. The property condemned is to be used for improvements to Interstate 44 at the intersection of Highway 169 in Tulsa. The relevant procedural history not discussed in the Majority Opinion is as follows.
¶ 3 Before it began the improvement project, ODOT hired Walton Property Services, L.L.C., to conduct an appraisal of the property condemned. That appraisal determined that the value of the property being taken was $306,000, itemized as follows: (1) $3,206 for the temporary easement (Property B); (2) $35,000 for the reproduction cost of an outdoor sign; (3) $65,369 for the value of the land taken for the permanent right of way (Property A); (4) $108,555 for the uneconomic value of the remainder of the Mehtas' property not taken as part of Property A; and (5) $94,231 for the loss of ground rent due to removal of the outdoor sign.
¶ 4 The sign is owned by Eller Media Company and is located on a triangular piece of land that abuts part of the north border of Property A. The sign is described in the trial court pleadings as Property D and the triangular property is described as Property C. It appears that Property C is part of the 6.51-acre tract owned by the Mehtas and is located within the north fence line of the Mehtas' property. The Walton appraisal value was the amount of a pre-condemnation offer tendered by ODOT to the Mehtas and Eller. When that offer was rejected, ODOT filed its condemnation petition. The legal description of Property C, the legal description of the Mehtas' property south of Property A and any reference to the Eller sign are not included in ODOT's petition. Nonetheless, ODOT named Eller as a defendant in this condemnation proceeding.
¶ 5 Commissioners were appointed and their February 6, 2002, Report determined that the value of the property taken was $710,000. This Report is on a form provided by ODOT, which has one blank space for the Commissioners to record their valuation. On March 29, 2002, ODOT paid the $710,000 to the Court Clerk. All three parties filed demands for jury trial in April 2002.
¶ 6 The Mehtas and Eller filed exceptions to the `Commissioners' Report because the amount of each party's damages was not segregated.[1] ODOT responded, arguing that the Mehtas and Eller had talked to the Commissioners, discussed their respective damages theories, and provided supporting documentation before the $710,000 valuation had been determined. Consequently, ODOT argued that the Mehtas and Eller had not shown good cause for a new report. ODOT also argued that separate valuation of Eller's leasehold interest from the Mehtas ownership interest was not permitted by applicable law because it would violate the "unit Rule," which requires the unitary valuation of all interests being condemned. In its response, ODOT also informed the Trial Court for the first time that Eller's sign was not located on the property being condemned and that it would be filing a motion for summary judgment to establish Eller's lack of interest in the condemned property. ODOT described its "mistaken belief when its petition was filed that the sign was located on the Mehtas' property but explained that it had subsequently discovered an easement to Property C granted to ODOT in 1962 from the Mehtas' predecessor in interest.
*1224 ¶ 7 On July 29, 2002, the Trial Court denied ODOT's motion for summary judgment, granted the Mehtas' and Eller's exceptions and ordered that new instructions be submitted. New instructions to the Commissioners were finally approved on January 28, 2003, directing them to separately value four property interests, Properties A, B, C, and D. The Commissioners filed their Second Report on April 8, 2004, which was corrected on May 4, 2004. The Second Report reached the same $710,000 total value determined by the Commissioners in their First Report. The four Properties, and their respective values assigned by the Commissioners in their Second Report, are described as:
Property A. The 3.69 acres taken by ODOT ($587,000).
Property B. The .31 acres taken for a temporary easement ($8,000).
Property C. A triangular lot adjacent to Property A ($80,000).
Property D. An outdoor advertising sign ($35,000).
¶ 8 ODOT filed its Exception to the Second Report on May 10, 2004, asserting essentially the same position argued in its original response to the Mehtas' and Eller's exceptions to the first Report. The Mehtas and ODOT again filed demands for jury trial in May 2004. On August 25, 2004, the Trial Court denied ODOT's Exception to the Second Report in the order that is the subject of this appeal. However, prior to this ruling, Eller repaid the $35,000 previously distributed to it by the Court Clerk, ODOT and Eller resolved their differences, and on February 26, 2003, ODOT filed a dismissal with prejudice and release of claims terminating this litigation as to Eller.

DISCUSSION
¶ 9 In my view, this appeal involves one issue: Was the Trial Court's order denying ODOT's Exception to the Commissioners' Second Report an appealable order? To determine that question it is first necessary to analyze the substance of ODOT's argument in its Exception.
¶ 10 First, ODOT's argument that Eller's leasehold interest could not be separately valued is moot. I agree with the Majority's analysis of applicable law and the "unit rule." Even though the Mehtas do not claim any interest in the sign or the $35,000 the Commissioners assigned to the value of that sign, valuation of the Eller sign located on Property C should not have been separately stated. Nonetheless, the dismissal of Eller by ODOT with prejudice precludes any future litigation with respect to Eller's interest in any property condemned or damaged, including the value of its sign. Consequently, that issue is not before this Court just as it was not before the Trial Court when it denied ODOT's Exception to the Second Report and entered the order that is the subject of this appeal.
¶ 11 Second, although ODOT's "unit rule" argument is generally presented, the specific argument is directed to the separate valuation of Eller's leasehold interest in Property C. I do not read ODOT's Exception to argue that separate valuation of Property A and Property B was improper, and the specific issues in ODOT's Petition in Error identify only the separate valuation of Properties C and D as appellate issues.

I. The Substance of ODOT's Appeal
¶ 12 Consequently, in my view, the only issue for this Court to decide relates to Property C. ODOT asserts that it "owns" Property C. ODOT argues that it was improper for the Trial Court to order the valuation of Property C because ODOT cannot condemn what it already owns and that the only properties described in its condemnation petition are Properties A and B. ODOT's "ownership" argument is based on the 1962 permanent easement. ODOT does not claim to have acquired fee simple title to Property C by virtue of this easement. ODOT does appear to argue that it acquired all of the interest to this property that might be affected by its taking of Properties A and B.
¶ 13 The Mehtas assert that they own some interest in Property C. First, the Mehtas challenge the existence of the 1962 easement contending that ODOT has abandoned the easement. Second, they claim adverse possession of Property C as evidenced by their continued use of the property and its *1225 inclusion within their fence line and their lease with Eller for use of the space occupied by the outdoor sign. Finally, the Mehtas claim ownership of Property C subject to the 1962 easement, a claim which ODOT does not dispute.[2]
¶ 14 In this appeal, ODOT seeks to have the original Commissioners' Report reinstated. That request, in effect, challenges the Trial Court's July 2002 order granting the Mehtas' and Eller's exceptions. ODOT did not appeal from that order and it does not list as an appellate issue in this appeal an error regarding that order. For the reasons discussed herein, ODOT, in my view, could not have appealed that order. Although there is much yet to be determined in this case, particularly the nature and extent of the Mehtas' ownership interest in Property C, it is clear that ODOT's inclusion of Property C and the Eller sign in its pre-condemnation offer and negotiations, as well as its naming of Eller in its condemnation petition, created confusion regarding the scope of this condemnation and caused the Commissioners to include the value of Properties C and D in their original Report. In my view, even if the confusion had not been caused by ODOT, this fact constituted good cause for the Trial Court to have issued new instructions.
¶ 15 ODOT's right to condemn Property A and Property B is not in dispute. Therefore, determination of the taking issue, which the majority correctly notes may result in an appealable order, was not an issue before the Trial Court when it ruled on ODOT's second exception. The jury demanded by both parties will be asked to determine only the just compensation due the Mehtas for the property taken. However, because the Mehtas claim some ownership interest in Property C and claim injury to that property as a result of the taking of Properties A and B, the jury may be asked to consider the just compensation for that property as well as for the damage to the remainder of the Mehtas' property located south of Property A. Because there is no issue regarding the taking of Properties A and B, in my view, the Trial .Court's order of August 25, 2004, denying ODOT's Exception to the valuation of Property C is not an appealable order.[3]

II. The Lack of an Appealable Order
¶ 16 For its authority to bring this appeal, ODOT relies on 69 O.S.2001 § 1203(f), which provides that a party aggrieved by the "decision of the district court on exceptions to the report of the commissioners, or jury trial" may appeal to the Supreme Court. The Mehtas argue that the issues raised in this appeal can and should be first resolved in the Trial Court as part of the jury trial requested by both parties. The Mehtas did not file a motion to dismiss this appeal. Nonetheless, the question of this Court's jurisdiction is fundamental and may neither be waived by the parties nor overlooked by the Court. Barrett v. Barrett, 1994 OK 92, ¶ 13, 878 P.2d 1051, 1054.
¶ 17 Despite the general statement of authority to appeal set out in section 1203(f), this Court has jurisdiction to decide only those appeals from the Trial Court's judgments, final orders and certain interlocutory orders. See 12 O.S.2001 § 952; 20 O.S.2001 § 30.1. "A judgment is the final determination of the rights of the parties in an action." 12 O.S.2001 § 681. The order appealed in this case is not a judgment; it is an interlocutory *1226 determination of some, but not all, issues. ODOT did not ask the Trial Court to certify its order for interlocutory appeal, see 12 O.S.2001 § 994, and it is not an interlocutory order appealable by right, see 12 O.S. 2001 § 993. The question is, therefore, whether the Trial Court's order denying ODOT's Exception is a final order over which this Court has jurisdiction.

A. Appealable Condemnation Orders
¶ 18 There are only three pleadings authorized to be filed in a condemnation proceeding: (1) the petition, (2) objections to the report of the commissioners, and (3) a demand for jury trial. Board of County Comm'rs of Creek County v. Casteel, 1974 OK 31, ¶ 15, 522 P.2d 608, 611. The filing of an answer to join the issues raised by the petition is not permitted, and the issue of the propriety of the taking can only be joined by filing an objection to the commissioners' report. Id. at ¶¶ 16, 20, 522 P.2d at 611. Where the necessity of the taking is an issue, "it must be finally determined judicially, prior to a final determination of any question concerning the amount of damages." Id. at ¶ 18, 522 P.2d at 611.
¶ 19 Condemnation is a special proceeding. Id. at ¶ 15, 522 P.2d at 610. "An order affecting a substantial right, made in a special proceeding . . . is a final order." 12 O.S.2001 § 953. The decision of a district court regarding the condemning authority's right to take affects a substantial right and, therefore, constitutes a final order. McMillian v. Holcomb, 1995 OK 117, ¶ 3, 907 P.2d 1034, 1035-36. A final order is an appealable order. 12 O.S.2001 § 952(b)(1). And the taking issue "must be finally determined judicially, prior to a final determination of any question concerning the amount of damages." Casteel, 1974 OK 31 at ¶ 18, 522 P.2d at 611.
¶ 20 In this case, however, ODOT's right to take Property A and Property B is not an issue.
[W]here there is no attack upon the right to take the property and the objection is to the assessment of the value of the property an order made by the trial court in a proceeding on the appointment and report of the commissioners is not a final order and cannot be brought to this court prior to a final determination of the proceeding.
Biles v. Oklahoma Gas & Elec. Co., 1956 OK 84, ¶ 6, 294 P.2d 817, 818. In Biles, the Court dismissed the appeal of an order that refused to disqualify the commissioners appointed and denied a request for appointment of new commissioners. In dismissing the appeal, the Court noted: "[A]n order setting aside the report of commissioners in condemnation proceedings, and directing a new appraisement is interlocutory and not final, and an appeal will not lie therefrom." Id. at ¶ 3, 294 P.2d at 818 (quoting Owens v. Oklahoma Turnpike Auth., 1954 OK 345, ¶ 1, 283 P.2d 827, 828).
¶ 21 The cases cited by the Majority for the proposition that the issue of taking must be decided before trial of just compensation are, in my view, consistent with the holding in Biles and do not establish a right to appeal from a decision of the trial court prior to the conclusion of the jury trial unless that decision decides the issue of taking. The Majority cites McMillian v. Holcomb, wherein the Oklahoma Supreme Court recognized that "an order adjudicating a right to condemn is appealable pursuant to 12 O.S.[2001] § 952(b)(1) as a final order." 1995 OK 117 at ¶ 3, 907 P.2d at 1035. In footnote 1 of McMillian, the Supreme Court cited several cases supporting this general proposition, all of which the Majority also cites in its Opinion. These cases are Jerry Scott Drilling Co., Inc. v. Scott, 1989 OK 131, n. 3, 781 P.2d 826, 828 n. 3; Oklahoma Gas & Elec. Co. v. Chez, 1974 OK 99, ¶ 6, 527 P.2d 165, 167; Watchorn Basin Ass'n v. Oklahoma Gas & Elec. Co., 1974 OK 27, ¶ 12, 525 P.2d 1357, 1359; Delhi Gas Pipeline Corp. v. Swanson, 1974 OK 26, ¶ 13, 520 P.2d 670, 671; Town of Ames v. Wybrant, 1950 OK 197, ¶ 13, 203 Okla. 307, 220 P.2d 693, 695; and Wrightsman v. Southwestern Natural Gas Co., 1935 OK 724, ¶ 43, 173 Okla. 75, 46 P.2d 925, 932.
¶ 22 Except for Scott, none of the cited cases involved circumstances where a party appealed from a trial court's ruling on exceptions to the report of appraisers after having demanded a jury trial. Scott is a Surface Damages Act case wherein the Supreme Court found the situation to be "analogous to *1227 instances that have been presented in condemnation cases." 1989 OK 131 at ¶ 9, 781 P.2d at 828. Scott dealt with a party's ability to simultaneously demand a jury trial and seek appellate review of a trial court's order confirming an appraisal. The Supreme Court dismissed the appeal as premature, stating:
[T]he Legislature never intended an appeal to lie from the ruling of a trial court on exceptions unless said order could be deemed to be a final order. Primarily because of a demand for jury trial the order appealed from is not imbued with the attributes of finality such that it is subject to immediate appeal to this Court.
. . . .
Although the order of a trial court on exceptions may in certain instances be a final order subject to appeal, such as when no demand for jury trial has been made, when a timely demand for jury trial has in fact been filed the report of appraisers and a trial court order confirming it do not end the litigation. The appropriate amount of damages must still be fixed by a jury as allowed in the statutory scheme. Thus, in the normal situation where a jury assessment has been demanded, only where the jury has finally determined the amount of compensation will the case be in a posture for appeal to this Court.
Id. at ¶¶ 6, 8, 781 P.2d at 828 (emphasis added). See also Wrightsman, 1935 OK 724 at ¶ 0, 46 P.2d at 925 (Syllabus 2) ("The decision of the district court in condemnation proceedings on questions relating to the right to condemn may be brought to this court for review on appeal provided the appeal is taken from an appealable order."). Division IV of this Court relied on Scott, when explaining that "one must appeal either from the decision of the court on the exceptions to the report or from the judgment entered on the jury verdict." Stephens Prod Co. v. Taylor, 1997 OK CIV APP 70, ¶ 6, 949 P.2d 301, 302.

B. The Order Denying ODOT's Exception Is Not Appealable
¶ 23 In this case, ODOT's Exception to the Second Report does not, for obvious reasons, challenge the right to take Properties A and B, and that issue is not raised by any pleading filed by the Mehtas. The extent of the Mehtas' ownership interest in Property C does not raise a taking issue. ODOT's interest in that property was not acquired by condemnation but by an easement voluntarily granted by the Mehtas' predecessor in interest. Therefore, the issue decided in Elliott v. City of Guthrie, 1986 OK 59, 725 P.2d 861, is not before this Court. Elliott determined that the nature of the estate taken in a condemnation proceeding is the proper subject of judicial determination. Here, the estate taken by ODOT in Property C is defined by the 1962 easement, and what remains for determination is the value of the interest the Mehtas ultimately prove that they own.
¶ 24 In my view, therefore, the Majority incorrectly construes the Trial Court's Amended Instructions to Commissioners as a judicial determination that ODOT's condemnation proceeding constitutes a taking of Property C. The Majority's construction is not without foundation. The Trial Court included Property C and Property D in its description of "Properties condemned." It also described Property C as being taken in fee simple. Nonetheless, the Trial Court's reference to the "taking" of Property C is clearly and repeatedly qualified. The Commissioners were instructed that ODOT disputed taking Property C and the Commissioners were specifically instructed that they were not to decide whether a taking of Property C had, or had not occurred. While I agree with the Majority that the Trial Court could not expand the scope of the taking described in ODOT's petition, I do not agree that is the effect of the Trial Court's instructions.
¶ 25 As a result of ODOT's dismissal of Eller, there is only one issue to be tried regarding Properties A and B and that is the amount of just compensation due the Mehtas for the taking of that property. That issue properly considers not only the value of the property taken but also any "impairment or depreciation of value done to the remainder." Oklahoma Gas & Elec. Co. v. Kelly, 1936 OK 427, ¶ 0, 177 Okla. 206, 58 P.2d 328. See also Okla. Const, art. 2, § 24. If unqualified, the *1228 Trial Court's description of the property taken was in error. In my view, the Trial Court properly instructed the Commissioners to consider both the value of the property taken and any damage to the remainder. The Commissioners' separate listing of values for these properties, other than with respect to Property D, does not violate the unit rule. As the Trial Court noted at the conclusion of the hearing of August 17, 2004, on ODOT's Exception to the Second Report:
[T]hey've broken it down; how bound I have to be to that, I don't think-To me they're just showing me how they came to the grand total and we know what the grand total is. . . . so I'm not saying that I'm going to pay that much attention to all these little, separate numbers, we know what the grand total is, and let's just go with that.
¶ 26 Regarding these separate valuations, the controlling authority, Grand River Dam Auth. v. Gray, 1943 OK 219, 192 Okla. 547, 138 P.2d 100, is relied on by all parties and the Majority. In that case, two tracts of land were at issue, a 70-acre tract, of which 52.6 acres were taken, and a 60-acre tract operated with the 70-acre tract as a single farm. The Oklahoma Supreme Court found no error and no violation of the unit rule in the admission of evidence that the taking of the 52.6 acres rendered the remainder of the 70-acre tract practically worthless and evidence that loss of the 52.6 acres seriously impaired the value of the 70-acre tract. The Court also found no error in instructing the jury to separately state that portion of the total damage that was caused to the holder of a life estate in the two tracts. Id. at ¶ 8, 138 P.2d at 103.
¶ 27 Here, we deal with only one 5.61-acre tract of land on which Properties A, B and C are located. The Mehtas' ownership interest in Property C may be different than it is in Property A or the remainder of their property south of Property A, but that does not mean that interest is necessarily devoid of value. Further, the Mehtas may prove that ODOT abandoned the 1962 easement or that they now own Property C in fee simple by virtue of adverse possession. While ODOT disputes that it abandoned the easement or that the Mehtas have acquired title by adverse possession, it concedes that the Mehtas own some interest in Property C.
¶ 28 Neither ODOT nor the Majority contend that the Commissioners should not, in addition to determining the value of the 3.69 acres taken in fee simple, also determine the damage to the portion of the Mehtas' land south of Property A that was not taken in this proceeding. And, as the Walton appraisal notes, that property and Property C will no longer be contiguous after the taking of Property A or have access from the taken property. For these reasons, Walton concluded these properties should be considered "uneconomic remainders" and valued them accordingly in its pre-condemnation appraisal. I see no difference between the Mehta's property south of Property A and Property C located north of Property A, with one exception. Because of the 1962 easement issue, the Mehtas may not be entitled to any compensation for Property C because the interest they own in Property C is not damaged by the taking of Property A. In the alternative, they may be entitled to some compensation but not the full compensation to which the holder of the property free of the ODOT easement would be entitled. Finally, they may be entitled to full compensation if they prevail on either their abandonment or adverse possession claims. Regardless, those issues remain to be decided. None of those issues relates to ODOT's right to take Property A or Property B. All of those issues relate only to the just compensation due the Mehtas for the taking of Properties A and B and the "impairment or depreciation to the remainder."
¶ 29 The issue of damages is joined by filing the third pleading available in a condemnation proceeding, a demand for jury trial. Casteel, 1974 OK 31 at ¶ 16, 522 P.2d at 611. As stated, both parties have demanded a jury trial. With ODOT's dismissal of Eller, there is no issue raised in ODOT's Exception that does not relate to the just compensation due the Mehtas for the taking of Properties A and B. ODOT asked the Trial Court to reinstate the Commissioners' first Report. That Report values Properties A and B, and the damage to the Mehtas' property *1229 located north and south of Property A at $710,000.[4] The Second Report values those properties and damage at $675,000, assuming the Mehtas' ownership interest in Property C is the same as it is in Property A or the property south of Property A.
¶ 30 As stated, ODOT did not and could not have appealed the Trial Court's decision granting the Mehtas' and Eller's Exceptions to the Commissioners' First Report. "An order setting aside the report of commissioners in condemnation proceedings, and directing a new appraisement is interlocutory and not final, and an appeal will not lie therefrom." Owens, 1954 OK 345 at ¶ 0, 283 P.2d at 827 (syllabus 1). Likewise, the Trial Court's adverse ruling on the issue raised by ODOT's Exception to the Commissioners' Second Report, that the value of Property C should not have been separately stated, is interlocutory. In my view, that order does not determine the action, prevent a judgment, or affect a substantial right. See 12 O.S.2001 § 953. Consequently, it is not a final order. Finally, in a condemnation proceeding, a jury's verdict supersedes the commissioners' award, rendering the issue of the correctness the Second Report moot. Owens, 1954 OK 345 at ¶ 9, 283 P.2d at 831.

CONCLUSION
¶ 31 Although any issue regarding the public's right to take must be resolved before the issue of damages can be tried, we are beyond that point in this case. ODOT's reading of section 1203(f) would authorize a simultaneous appeal of non-taking issues related to the commissioners' report and the conduct of a jury trial. That interpretation is inconsistent with: (1) "the plain and ordinary meaning" of the word "or," see World Publ'g Co. v. Miller, 2001 OK 49, ¶ 7, 32 P.3d 829, 832; (2) the alternative nature of the appellate procedure provided in subsections (e)(1) and (2) of section 1203; and (3) the finality of appealable orders required by 12 O.S.2001 § 952. More importantly, ODOT's interpretation of section 1203(f) is unsupported by, and contrary to, the holdings in Biles, Owens and other controlling case law. I would find that the Trial Court's order of August 25, 2004, from which ODOT appeals, is not an appealable order and dismiss this appeal.
NOTES
[1] Magic Circle Properties, LLC, subsequently acquired the Mehtas' interest in the property. In January of 2003, Magic Circle was joined as a party defendant. We will refer to these parties as the Mehtas, unless otherwise noted.
[2] We recognize the Mehtas dispute ODOT's ownership of Property C. This issue will be addressed infra.
[3] The issue of jurisdiction is fundamental and can be raised at any time sua sponte. See Collins v. Mid-Continent Pipeline Co., 1999 OK 56, ¶ 1 fn. 2, 6 P.3d 1050, 1051 fn. 2.
[4] We agree with ODOT that Oklahoma follows the "unit rule." See Grand River Dam Auth. v. Gray, 1943 OK 219, 192 Okla. 547, 138 P.2d 100 (Where there are multiple interest owners, the property to be condemned should first be appraised as a single unit "as though the property belonged to one person," with the total award apportioned to the various interests at a later time. This is frequently referred to as the "unit rule.").
[5] Again, we recognize the Mehtas dispute ODOT's ownership of Property C. This issue will be addressed infra.
[6] A motion to dismiss Eller as a party or an amended petition excluding Eller could have been a more efficient way to resolve the dispute.
[1] While these exceptions were pending, the Mehtas and Eller communicated with the Commissioners and were told that $35,000 of the $710,000 was the amount the Commissioners determined to be the value of the sign relocation. This amount was ultimately disbursed to Eller. The balance, minus taxes and other appropriate deductions, of $674,649 was disbursed to the Mehtas.
[2] Although the record is not entirely clear on this point, it appears that when the Mehtas acquired title to the 6.51 acre tract of land in Lot 1, which includes Property C, the 1962 permanent highway easement granted to ODOT by the Mehtas' predecessor in interest was recorded and appeared in their claim of title.
[3] In response to this Court's order of October 13, 2006, requesting additional briefing regarding this Court's jurisdiction to decide ODOT's appeal, ODOT emphasized the first portion of 69 O.S. 2001 § 1203(f): "Either party aggrieved may appeal . . . from the decision of the district court on exceptions to the report of commissioners,. . . ." In its relevant entirety the statute provides for an appeal from the district court's decision "on exceptions to the report of commissioners, or jury trial;. . . ." (emphasis added). ODOT does not discuss the effect of this alternative language. Nonetheless, the language clearly provides for an appeal of issues related to any jury trial. Because the issues raised by ODOT in this appeal relate to valuation and not taking, I do not find that ODOT would be foreclosed from raising any of these issues in an appeal from an adverse judgment on the jury's verdict.
[4] There is no indication in the record as to ODOT's motivation in this regard. However, the effect of that request, if granted, could influence post trial matters, such as the party assessed the costs of the action. "If the party demanding such trial does not recover a verdict more favorable to the party than the assessment of the commissioners, all costs in the district court shall be taxed against the party." 69 O.S.2001 § 1203(e)(1). In my view, it would be unfair to base such determinations on a commissioners' assessment that is artificially high because it mistakenly included property not involved in the condemnation due, at least in part, to ODOT's error.